# NATIONAL RAILROAD PASSENGER CORPORATION
## *v.* MORGAN

No. 00–1614.   Argued January 9, 2002—Decided June 10, 2002

102

THOMAS, J., delivered the opinion of the Court, in which STEVENS, SOUTER, GINSBURG, and BREYER, JJ., joined, and in which REHNQUIST, C. J., and O'CONNOR, SCALIA, and KENNEDY, JJ., joined as to Part II–A. O'CONNOR, J., filed an opinion concurring in part and dissenting in part, in which REHNQUIST, C. J., joined, in which SCALIA and KENNEDY, JJ., joined as to all but Part I, and in which BREYER, J., joined as to Part I, *post,* p. 123.

*Roy T. Englert, Jr.,* argued the cause for petitioner. With him on the briefs was *Melissa B. Rogers.*

*Pamela Y. Price* argued the cause for respondent. With her on the brief were *Howard J. Moore, Jr.,* and *William McNeill III.*

*Austin C. Schlick* argued the cause for the United States as *amicus curiae* urging reversal. With him on the brief were *Solicitor General Olson, Acting Assistant Attorney General Schiffer, Deputy Solicitor General Clement, Marleigh D. Dover,* and *John C. Hoyle.**

JUSTICE THOMAS delivered the opinion of the Court.

Respondent Abner Morgan, Jr., sued petitioner National Railroad Passenger Corporation (Amtrak) under Title VII of the Civil Rights Act of 1964, 78 Stat. 253, as amended, 42 U. S. C. § 2000e *et seq.,* alleging that he had been subjected to discrete discriminatory and retaliatory acts and had experienced a racially hostile work environment throughout his employment. Section 2000e–5(e)(1) requires that a Title

---

*Katherine Y. K. Cheung, Ann Elizabeth Reesman, Stephen A. Bokat,* and *Robin S. Conrad* filed a brief for the Equal Employment Advisory Council et al. as *amici curiae* urging reversal.

Briefs of *amici curiae* urging affirmance were filed for the Impact Fund et al. by *Ellen Lake, Brad Seligman,* and *Jocelyn D. Larkin;* for the NAACP Legal Defense and Educational Fund, Inc., by *Robert H. Stroup, Elaine R. Jones, Theodore M. Shaw, Norman J. Chachkin, James L. Cott,* and *Eric Schnapper;* for the Lawyers' Committee for Civil Rights Under Law et al. by *Thomas J. Henderson, John A. Payton, Gary T. Johnson, Norman Redlich, Barbara R. Arnwine, Dennis Courtland Hayes, Marcia D. Greenberger, Judith L. Lichtman, Marc Stern,* and *Paula A. Brantner.*

VII plaintiff file a charge with the Equal Employment Opportunity Commission (EEOC) either 180 or 300 days "after the alleged unlawful employment practice occurred." We consider whether, and under what circumstances, a Title VII plaintiff may file suit on events that fall outside this statutory time period.

The United States Court of Appeals for the Ninth Circuit held that a plaintiff may sue on claims that would ordinarily be time barred so long as they either are "sufficiently related" to incidents that fall within the statutory period or are part of a systematic policy or practice of discrimination that took place, at least in part, within the limitations period. We reverse in part and affirm in part. We hold that the statute precludes recovery for discrete acts of discrimination or retaliation that occur outside the statutory time period. We also hold that consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period. The application of equitable doctrines, however, may either limit or toll the time period within which an employee must file a charge.

I

On February 27, 1995, Abner J. Morgan, Jr., a black male, filed a charge of discrimination and retaliation against Amtrak with the EEOC and cross-filed with the California Department of Fair Employment and Housing. Morgan alleged that during the time period that he worked for Amtrak he was "consistently harassed and disciplined more harshly than other employees on account of his race."[1] App. to Pet.

---

[1] Such discrimination, he alleges, began when the company hired him in August 1990 as an electrician helper, rather than as an electrician. Subsequent alleged racially motivated discriminatory acts included a termination for refusing to follow orders, Amtrak's refusal to allow him to

for Cert. 25a. The EEOC issued a "Notice of Right to Sue" on July 3, 1996, and Morgan filed this lawsuit on October 2, 1996. While some of the allegedly discriminatory acts about which Morgan complained occurred within 300 days of the time that he filed his charge with the EEOC, many took place prior to that time period. Amtrak filed a motion, arguing, among other things, that it was entitled to summary judgment on all incidents that occurred more than 300 days before the filing of Morgan's EEOC charge. The District Court granted summary judgment in part to Amtrak, holding that the company could not be liable for conduct occurring before May 3, 1994, because that conduct fell outside of the 300-day filing period. The court employed a test established by the United States Court of Appeals for the Seventh Circuit in *Galloway* v. *General Motors Service Parts Operations*, 78 F. 3d 1164 (1996): A "plaintiff may not base [the] suit on conduct that occurred outside the statute of limitations unless it would have been unreasonable to expect the plaintiff to sue before the statute ran on that conduct, as in a case in which the conduct could constitute, or be recognized, as actionable harassment only in the light of events that occurred later, within the period of the statute of limitations." *Id.*, at 1167. The District Court held that "[b]ecause Morgan believed that he was being discriminated against at the time that all of these acts occurred, it would not be unreasonable to expect that Morgan should have filed an EEOC charge on these acts before the limitations period on these claims ran." App. to Pet. for Cert. 40a.[2]

Morgan appealed. The United States Court of Appeals for the Ninth Circuit reversed, relying on its previous articu-

---

participate in an apprenticeship program, numerous "written counselings" for absenteeism, as well as the use of racial epithets against him by his managers.

[2] The District Court denied summary judgment to Amtrak with respect to those claims it held were timely filed. The remaining claims then proceeded to trial, where the jury returned a verdict in favor of Amtrak.

lation of the continuing violation doctrine, which "allows courts to consider conduct that would ordinarily be time barred 'as long as the untimely incidents represent an ongoing unlawful employment practice.'" 232 F. 3d 1008, 1014 (2000) (quoting *Anderson* v. *Reno*, 190 F. 3d 930, 936 (CA9 1999)). Contrary to both the Seventh Circuit's test, used by the District Court, and a similar test employed by the Fifth Circuit,[3] the Ninth Circuit held that its precedent "precludes such a notice limitation on the continuing violation doctrine." 232 F. 3d, at 1015.

In the Ninth Circuit's view, a plaintiff can establish a continuing violation that allows recovery for claims filed outside of the statutory period in one of two ways. First, a plaintiff may show "a series of related acts one or more of which are within the limitations period." *Ibid.* Such a "serial violation is established if the evidence indicates that the alleged acts of discrimination occurring prior to the limitations period are sufficiently related to those occurring within the limitations period." *Ibid.* The alleged incidents, however, "cannot be isolated, sporadic, or discrete." *Ibid.* Second, a plaintiff may establish a continuing violation if he shows "a systematic policy or practice of discrimination that operated, in part, within the limitations period—a systemic violation." *Id.*, at 1015–1016.

To survive summary judgment under this test, Morgan had to "raise a genuine issue of disputed fact as to (1) the existence of a continuing violation—be it serial or systemic," and (2) the continuation of the violation into the limitations period. *Id.*, at 1016. Because Morgan alleged three types

---

[3] The Fifth Circuit employs a multifactor test, which, among other things, takes into account: (1) whether the alleged acts involve the same type of discrimination; (2) whether the incidents are recurring or independent and isolated events; and (3) whether the earlier acts have sufficient permanency to trigger the employee's awareness of and duty to challenge the alleged violation. See *Berry* v. *Board of Supervisors,* 715 F. 2d 971, 981 (1983).

of Title VII claims, namely, discrimination, hostile environment, and retaliation, the Court of Appeals considered the allegations with respect to each category of claim separately and found that the prelimitations conduct was sufficiently related to the postlimitations conduct to invoke the continuing violation doctrine for all three. Therefore, "[i]n light of the relatedness of the incidents, [the Court of Appeals found] that Morgan ha[d] sufficiently presented a genuine issue of disputed fact as to whether a continuing violation existed." *Id.*, at 1017. Because the District Court should have allowed events occurring in the prelimitations period to be "presented to the jury not merely as background information, but also for purposes of liability," *id.*, at 1017–1018, the Court of Appeals reversed and remanded for a new trial.

We granted certiorari, 533 U. S. 927 (2001), and now reverse in part and affirm in part.

## II

The Courts of Appeals have taken various approaches to the question whether acts that fall outside of the statutory time period for filing charges set forth in 42 U. S. C. § 2000e–5(e) are actionable under Title VII. See n. 3, *supra*. While the lower courts have offered reasonable, albeit divergent, solutions, none are compelled by the text of the statute. In the context of a request to alter the timely filing requirements of Title VII, this Court has stated that "strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law." *Mohasco Corp.* v. *Silver*, 447 U. S. 807, 826 (1980). In *Mohasco*, the Court rejected arguments that strict adherence to a similar statutory time restriction[4] for filing a

---

[4] The Court there considered both the 300-day time limit of 42 U. S. C. § 2000e–5(e) and the requirement of § 2000e–5(c) that, in the case of an unlawful employment practice that occurs in a State that prohibits such practices, no charge may be filed with the EEOC before the expiration of 60 days after proceedings have been commenced in the appropriate state agency unless such proceedings have been earlier terminated.

charge was "unfair" or that "a less literal reading of the Act would adequately effectuate the policy of deferring to state agencies." *Id.*, at 824–825. Instead, the Court noted that "[b]y choosing what are obviously quite short deadlines, Congress clearly intended to encourage the prompt processing of all charges of employment discrimination." *Id.*, at 825. Similarly here, our most salient source for guidance is the statutory text.

Title 42 U. S. C. § 2000e–5(e)(1) is a charge filing provision that "specifies with precision" the prerequisites that a plaintiff must satisfy before filing suit. *Alexander* v. *Gardner-Denver Co.*, 415 U. S. 36, 47 (1974). An individual must file a charge within the statutory time period and serve notice upon the person against whom the charge is made. In a State that has an entity with the authority to grant or seek relief with respect to the alleged unlawful practice, an employee who initially files a grievance with that agency must file the charge with the EEOC within 300 days of the employment practice; in all other States, the charge must be filed within 180 days. A claim is time barred if it is not filed within these time limits.

For our purposes, the critical sentence of the charge filing provision is: "A charge under this section *shall be filed* within one hundred and eighty days *after the alleged unlawful employment practice occurred.*" § 2000e–5(e)(1) (emphasis added). The operative terms are "shall," "after . . . occurred," and "unlawful employment practice." "[S]hall" makes the act of filing a charge within the specified time period mandatory. See, *e. g., Lexecon Inc.* v. *Milberg Weiss Bershad Hynes & Lerach,* 523 U. S. 26, 35 (1998) ("[T]he mandatory 'shall,' . . . normally creates an obligation impervious to judicial discretion"). "[O]ccurred" means that the practice took place or happened in the past.[5] The require-

---

[5] "In the absence of an indication to the contrary, words in a statute are assumed to bear their 'ordinary, contemporary, common meaning.'" *Walters* v. *Metropolitan Ed. Enterprises, Inc.,* 519 U. S. 202, 207

ment, therefore, that the charge be filed "after" the practice "occurred" tells us that a litigant has up to 180 or 300 days *after* the unlawful practice happened to file a charge with the EEOC.

The critical questions, then, are: What constitutes an "unlawful employment practice" and when has that practice "occurred"? Our task is to answer these questions for both discrete discriminatory acts and hostile work environment claims. The answer varies with the practice.

## A

We take the easier question first. A discrete retaliatory or discriminatory act "occurred" on the day that it "happened." A party, therefore, must file a charge within either 180 or 300 days of the date of the act or lose the ability to recover for it.

Morgan argues that the statute does not require the filing of a charge within 180 or 300 days of each discrete act, but that the language requires the filing of a charge within the specified number of days after an "unlawful employment *practice.*" "Practice," Morgan contends, connotes an ongoing violation that can endure or recur over a period of time. See Brief for Respondent 25–26. In Morgan's view, the term "practice" therefore provides a statutory basis for the Ninth Circuit's continuing violation doctrine.[6] This argu-

---

(1997) (quoting *Pioneer Investment Services Co.* v. *Brunswick Associates Ltd. Partnership*, 507 U. S. 380, 388 (1993) (internal quotation marks and citation omitted)). Webster's Third New International Dictionary 1561 (1993) defines "occur" as "to present itself: come to pass: take place: HAPPEN." See also Black's Law Dictionary 1080 (6th ed. 1990) (defining "[o]ccur" as "[t]o happen; . . . to take place; to arise").

[6] Morgan also argues that the EEOC's discussion of continuing violations in its Compliance Manual, which provides that certain serial violations and systemic violations constitute continuing violations that allow relief for untimely events, as well as the positions the EEOC has taken in prior briefs, warrant deference under *Chevron U. S. A. Inc.* v. *Natural*

ment is unavailing, however, given that 42 U. S. C. § 2000e–2 explains in great detail the sorts of actions that qualify as "[u]nlawful employment practices" and includes among such practices numerous discrete acts. See, e. g., § 2000e–2(a) ("It shall be an unlawful employment practice for an employer— (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . ."). There is simply no indication that the term "practice" converts related discrete acts into a single unlawful practice for the purposes of timely filing. Cf. § 2000e–6(a) (providing that the Attorney General may bring a civil action in "pattern or practice" cases).

We have repeatedly interpreted the term "practice" to apply to a discrete act or single "occurrence," even when it has a connection to other acts. For example, in *Electrical Workers* v. *Robbins & Myers, Inc.,* 429 U. S. 229, 234 (1976), an employee asserted that his complaint was timely filed because the date "the alleged unlawful employment practice occurred" was the date after the conclusion of a grievance arbitration procedure, rather than the earlier date of his discharge. The discharge, he contended, was "tentative" and "nonfinal" until the grievance and arbitration procedure ended. Not so, the Court concluded, because the discriminatory act *occurred* on the date of discharge—the date that the parties understood the termination to be final. *Id.,* at 234–235. Similarly, in *Bazemore* v. *Friday,* 478 U. S. 385

*Resources Defense Council, Inc.,* 467 U. S. 837 (1984). Brief for Respondent 26–32. But we have held that the EEOC's interpretive guidelines do not receive *Chevron* deference. See *EEOC* v. *Arabian American Oil Co.,* 499 U. S. 244, 257 (1991). Such interpretations are "'entitled to respect' under our decision in *Skidmore* v. *Swift & Co.,* 323 U. S. 134, 140 (1944), but only to the extent that those interpretations have the 'power to persuade.'" *Christensen* v. *Harris County,* 529 U. S. 576, 587 (2000).

(1986) *(per curiam)*, a pattern-or-practice case, when considering a discriminatory salary structure, the Court noted that although the salary discrimination began prior to the date that the act was actionable under Title VII, "[e]ach week's paycheck that deliver[ed] less to a black than to a similarly situated white is a wrong actionable under Title VII . . . ." *Id.*, at 395.

This Court has also held that discrete acts that fall within the statutory time period do not make timely acts that fall outside the time period. In *United Air Lines, Inc.* v. *Evans*, 431 U. S. 553 (1977), United forced Evans to resign after she married because of its policy against married female flight attendants. Although Evans failed to file a timely charge following her initial separation, she nonetheless claimed that United was guilty of a present, continuing violation of Title VII because its seniority system failed to give her credit for her prior service once she was rehired. The Court disagreed, concluding that "United was entitled to treat [Evans' resignation] as lawful after [she] failed to file a charge of discrimination within the" charge filing period then allowed by the statute. *Id.*, at 558. At the same time, however, the Court noted that "[i]t may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue." *Ibid.* The emphasis, however, "should not be placed on mere continuity" but on "whether any present *violation* exist[ed]." *Ibid.* (emphasis in original).

In *Delaware State College* v. *Ricks*, 449 U. S. 250 (1980), the Court evaluated the timeliness of an EEOC complaint filed by a professor who argued that he had been denied academic tenure because of his national origin. Following the decision to deny tenure, the employer offered him a "'terminal'" contract to teach an additional year. *Id.*, at 253. Claiming, in effect, a "'continuing violation,'" the professor argued that the time period did not begin to run until his actual termination. *Id.*, at 257. The Court rejected this argument: "Mere continuity of employment, without more,

is insufficient to prolong the life of a cause of action for employment discrimination." *Ibid.* In order for the time period to commence with the discharge, "he should have identified the alleged discriminatory acts that continued until, or occurred at the time of, the actual termination of his employment." *Ibid.* He could not use a termination that fell within the limitations period to pull in the time-barred discriminatory act. Nor could a time-barred act justify filing a charge concerning a termination that was not independently discriminatory.

We derive several principles from these cases. First, discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act. The charge, therefore, must be filed within the 180- or 300-day time period after the discrete discriminatory act occurred. The existence of past acts and the employee's prior knowledge of their occurrence, however, does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed. Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim.

As we have held, however, this time period for filing a charge is subject to equitable doctrines such as tolling or estoppel. See *Zipes* v. *Trans World Airlines, Inc.*, 455 U. S. 385, 393 (1982) ("We hold that filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling"). Courts may evaluate whether it would be proper to apply such doctrines, although they are to be applied sparingly. See *Baldwin County Welcome Center* v. *Brown*, 466 U. S. 147, 152 (1984) *(per curiam)* ("Procedural requirements established by Congress for gaining access to

the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants").

The Court of Appeals applied the continuing violations doctrine to what it termed "serial violations," holding that so long as one act falls within the charge filing period, discriminatory and retaliatory acts that are plausibly or sufficiently related to that act may also be considered for the purposes of liability. See 232 F. 3d, at 1015. With respect to this holding, therefore, we reverse.

Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable "unlawful employment practice." Morgan can only file a charge to cover discrete acts that "occurred" within the appropriate time period.[7] While Morgan alleged that he suffered from numerous discriminatory and retaliatory acts from the date that he was hired through March 3, 1995, the date that he was fired, only incidents that took place within the timely filing period are actionable. Because Morgan first filed his charge with an appropriate state agency, only those acts that occurred 300 days before February 27, 1995, the day that Morgan filed his charge, are actionable. During that time period, Morgan contends that he was wrongfully suspended and charged with a violation of Amtrak's "Rule L" for insubordination while failing to complete work assigned to him, denied training, and falsely accused of threatening a man-

---

[7] Because the Court of Appeals held that the "discrete acts" were actionable as part of a continuing violation, there was no need for it to further contemplate when the time period began to run for each act. The District Court noted that "Morgan believed that he was being discriminated against at the time that all of these acts occurred. . . ." App. to Pet. for Cert. 40a. There may be circumstances where it will be difficult to determine when the time period should begin to run. One issue that may arise in such circumstances is whether the time begins to run when the injury occurs as opposed to when the injury reasonably should have been discovered. But this case presents no occasion to resolve that issue.

ager.[8] *Id.*, at 1013. All prior discrete discriminatory acts are untimely filed and no longer actionable.[9]

## B

Hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct. See 1 B. Lindemann & P. Grossman, Employment Discrimination Law 348–349 (3d ed. 1996) (hereinafter Lindemann) ("The repeated nature of the harassment or its intensity constitutes evidence that management knew or should have known of its existence"). The "unlawful employment practice" therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own. See *Harris* v. *Forklift Systems, Inc.*, 510 U. S. 17, 21 (1993) ("As we pointed out in *Meritor [Savings Bank, FSB* v. *Vinson*, 477 U. S. 57, 67 (1986),] 'mere utterance of an . . . epithet which engenders offensive feelings in a[n] employee,' *ibid.* (internal quotation marks omitted), does not sufficiently affect the conditions of employment to implicate Title VII"). Such claims are based on the cumulative effect of individual acts.

"We have repeatedly made clear that although [Title VII] mentions specific employment decisions with immediate consequences, the scope of the prohibition 'is not limited to "eco-

---

[8] The final alleged discriminatory act, he contends, led to his termination on March 3, 1995. Morgan alleges that after the manager reported that Morgan had threatened him, he was ordered into a supervisor's office. Then, after he asked for union representation or the presence of a co-worker as a witness, the supervisor denied both, ordered everyone out of the office, and yelled at Morgan to get his "black ass" into the office. Morgan refused and went home. He was subsequently suspended and charged with violations of two company rules and, following an investigatory hearing, terminated.

[9] We have no occasion here to consider the timely filing question with respect to "pattern-or-practice" claims brought by private litigants as none are at issue here.

nomic" or "tangible" discrimination,' *Harris,* [510 U. S., at 21] (quoting *Meritor Savings Bank, FSB* v. *Vinson,* [477 U. S.,] at 64), and that it covers more than 'terms' and 'conditions' in the narrow contractual sense." *Faragher* v. *Boca Raton,* 524 U. S. 775, 786 (1998) (quoting *Oncale* v. *Sundowner Offshore Services, Inc.,* 523 U. S. 75, 78 (1998)). As the Court stated in *Harris,* "[t]he phrase 'terms, conditions, or privileges of employment' [of 42 U. S. C. § 2000e–2(a)(1)] evinces a congressional intent 'to strike at the entire spectrum of disparate treatment of men and women' in employment, which includes requiring people to work in a discriminatorily hostile or abusive environment." 510 U. S., at 21 (some internal quotation marks omitted) (quoting *Meritor,* 477 U. S., at 64, in turn quoting *Los Angeles Dept. of Water and Power* v. *Manhart,* 435 U. S. 702, 707, n. 13 (1978)).[10] "Workplace conduct is not measured in isolation . . . ." *Clark County School Dist.* v. *Breeden,* 532 U. S. 268, 270 (2001) *(per curiam).* Thus, "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' Title VII is violated." *Harris,* 510 U. S., at 21 (citations omitted).

In determining whether an actionable hostile work environment claim exists, we look to "all the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.,* at 23. To assess whether a court may, for the purposes of determining liability, review all such conduct, including those acts that occur outside the filing period, we again look to the

---

[10] Hostile work environment claims based on racial harassment are reviewed under the same standard as those based on sexual harassment. See *Faragher* v. *Boca Raton,* 524 U. S. 775, 786–787, and n. 1 (1998); *Meritor Savings Bank, FSB* v. *Vinson,* 477 U. S. 57, 66–67 (1986).

statute. It provides that a charge must be filed within 180 or 300 days "after the alleged unlawful employment practice occurred." A hostile work environment claim is composed of a series of separate acts that collectively constitute one "unlawful employment practice." 42 U. S. C. § 2000e–5(e)(1). The timely filing provision only requires that a Title VII plaintiff file a charge within a certain number of days after the unlawful practice happened. It does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.[11]

That act need not, however, be the last act. As long as the employer has engaged in enough activity to make out an actionable hostile environment claim, an unlawful employment practice has "occurred," even if it is still occurring. Subsequent events, however, may still be part of the one hostile work environment claim and a charge may be filed at a later date and still encompass the whole.

It is precisely because the entire hostile work environment encompasses a single unlawful employment practice that we do not hold, as have some of the Circuits, that the plaintiff may not base a suit on individual acts that occurred outside the statute of limitations unless it would have been unreasonable to expect the plaintiff to sue before the statute ran

---

[11] Amtrak argues that recovery for conduct taking place outside the time period for filing a timely charge should be available only in hostile environment cases where the plaintiff reasonably did not know such conduct was discriminatory or where the discriminatory nature of such conduct is recognized as discriminatory only in light of later events. See Brief for Petitioner 38. The Court of Appeals for the Seventh Circuit adopted this approach in *Galloway* v. *General Motors Service Parts Operations,* 78 F. 3d 1164 (1996). See *supra,* at 106. Although we reject the test proposed by petitioner, other avenues of relief are available to employers. See *infra,* at 121–122.

on such conduct. The statute does not separate individual acts that are part of the hostile environment claim from the whole for the purposes of timely filing and liability. And the statute does not contain a requirement that the employee file a charge prior to 180 or 300 days "after" the single unlawful practice "occurred." Given, therefore, that the incidents constituting a hostile work environment are part of one unlawful employment practice, the employer may be liable for all acts that are part of this single claim. In order for the charge to be timely, the employee need only file a charge within 180 or 300 days of any act that is part of the hostile work environment.

The following scenarios illustrate our point: (1) Acts on days 1–400 create a hostile work environment. The employee files the charge on day 401. Can the employee recover for that part of the hostile work environment that occurred in the first 100 days? (2) Acts contribute to a hostile environment on days 1–100 and on day 401, but there are no acts between days 101–400. Can the act occurring on day 401 pull the other acts in for the purposes of liability? In truth, all other things being equal, there is little difference between the two scenarios as a hostile environment constitutes one "unlawful employment practice" and it does not matter whether nothing occurred within the intervening 301 days so long as each act is part of the whole. Nor, if sufficient activity occurred by day 100 to make out a claim, does it matter that the employee knows on that day that an actionable claim happened; on day 401 all incidents are still part of the same claim. On the other hand, if an act on day 401 had no relation to the acts between days 1–100, or for some other reason, such as certain intervening action by the employer, was no longer part of the same hostile environment claim, then the employee cannot recover for the previous acts, at least not by reference to the day 401 act.

Our conclusion with respect to the incidents that may be considered for the purposes of liability is reinforced by the

fact that the statute in no way bars a plaintiff from recovering damages for that portion of the hostile environment that falls outside the period for filing a timely charge. Morgan correctly notes that the timeliness requirement does not dictate the amount of recoverable damages. It is but one in a series of provisions requiring that the parties take action within specified time periods, see, e. g., §§ 2000e–5(b), (c), (d), none of which function as specific limitations on damages.

Explicit limitations on damages are found elsewhere in the statute. Section 1981a(b)(3), for example, details specific limitations on compensatory and punitive damages. Likewise, § 2000e–5(g)(1) allows for recovery of backpay liability for up to two years prior to the filing of the charge. If Congress intended to limit liability to conduct occurring in the period within which the party must file the charge, it seems unlikely that Congress would have allowed recovery for two years of backpay. And the fact that Congress expressly limited the amount of recoverable damages elsewhere to a particular time period indicates that the timely filing provision was not meant to serve as a specific limitation either on damages or the conduct that may be considered for the purposes of one actionable hostile work environment claim.

It also makes little sense to limit the assessment of liability in a hostile work environment claim to the conduct that falls within the 180- or 300-day period given that this time period varies based on whether the violation occurs in a State or political subdivision that has an agency with authority to grant or seek relief. It is important to remember that the statute requires that a Title VII plaintiff must wait 60 days after proceedings have commenced under state or local law to file a charge with the EEOC, unless such proceedings have earlier terminated. § 2000e–5(c). In such circumstances, however, the charge must still be filed within 300 days of the occurrence. See *Mohasco*, 447 U. S., at 825–826. The extended time period for parties who first file such

charges in a State or locality ensures that employees are neither time barred from later filing their charges with the EEOC nor dissuaded from first filing with a state agency. See *id.*, at 821 ("The history identifies only one reason for treating workers in deferral States differently from workers in other States: to give state agencies an opportunity to redress the evil at which the federal legislation was aimed, and to avoid federal intervention unless its need was demonstrated"). Surely, therefore, we cannot import such a limiting principle into the provision where its effect would be to make the reviewable time period for liability dependent upon whether an employee lives in a State that has its own remedial scheme.[12]

Simply put, § 2000e–5(e)(1) is a provision specifying when a charge is timely filed and only has the consequence of limiting liability because filing a timely charge is a prerequisite to having an actionable claim. A court's task is to determine whether the acts about which an employee complains are part of the same actionable hostile work environment practice, and if so, whether any act falls within the statutory time period.

With respect to Morgan's hostile environment claim, the Court of Appeals concluded that "the pre- and post-limitations period incidents involve[d] the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers." 232 F. 3d, at 1017. To support his claims of a hostile environment, Morgan presented evidence from a number of other employees that managers made racial jokes, performed racially derogatory acts, made negative comments regarding the capacity of blacks to be supervisors, and used various racial epithets. *Id.*, at 1013. Although many of the acts upon which his claim depends occurred outside the 300 day filing period,

---

[12] The same concern is not implicated with discrete acts given that, unlike hostile work environment claims, liability there does not depend upon proof of repeated conduct extending over a period of time.

we cannot say that they are not part of the same actionable hostile environment claim.[13]   On this point, we affirm.

## C

Our holding does not leave employers defenseless against employees who bring hostile work environment claims that extend over long periods of time.   Employers have recourse when a plaintiff unreasonably delays filing a charge.   As noted in *Zipes* v. *Trans World Airlines, Inc.*, 455 U. S. 385 (1982), the filing period is not a jurisdictional prerequisite to filing a Title VII suit.   Rather, it is a requirement subject to waiver, estoppel, and equitable tolling "when equity so requires."   *Id.*, at 398.   These equitable doctrines allow us to honor Title VII's remedial purpose "without negating the particular purpose of the filing requirement, to give prompt notice to the employer."   *Ibid.*

This Court previously noted that despite the procedural protections of the statute "a defendant in a Title VII enforcement action might still be significantly handicapped in making his defense because of an inordinate EEOC delay in filing the action after exhausting its conciliation efforts."   *Occidental Life Ins. Co. of Cal.* v. *EEOC*, 432 U. S. 355, 373 (1977). The same is true when the delay is caused by the employee, rather than by the EEOC.   Cf. *Albemarle Paper Co.* v. *Moody*, 422 U. S. 405, 424 (1975) ("[A] party may not be 'entitled' to relief if its conduct of the cause has improperly and substantially prejudiced the other party").   In such cases, the federal courts have the discretionary power to "to locate 'a just result' in light of the circumstances peculiar to the case."   *Id.*, at 424–425.

In addition to other equitable defenses, therefore, an employer may raise a laches defense, which bars a plaintiff from maintaining a suit if he unreasonably delays in filing a suit and as a result harms the defendant.   This defense " 're-

---

[13] We make no judgment, however, on the merits of Morgan's claim.

quires proof of (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense.'" *Kansas* v. *Colorado*, 514 U. S. 673, 687 (1995) (quoting *Costello* v. *United States*, 365 U. S. 265, 282, (1961)). We do not address questions here such as "how—and how much—prejudice must be shown" or "what consequences follow if laches is established." 2 Lindemann 1496–1500.[14] We observe only that employers may raise various defenses in the face of unreasonable and prejudicial delay.

### III

We conclude that a Title VII plaintiff raising claims of discrete discriminatory or retaliatory acts must file his charge within the appropriate time period—180 or 300 days—set forth in 42 U. S. C. § 2000e–5(e)(1). A charge alleging a hostile work environment claim, however, will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period. Neither holding, however, precludes a court from applying equitable doctrines that may toll or limit the time period.

For the foregoing reasons, the Court of Appeals' judgment is affirmed in part and reversed in part, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

---

[14] Nor do we have occasion to consider whether the laches defense may be asserted against the EEOC, even though traditionally the doctrine may not be applied against the sovereign. We note, however, that in *Occidental* there seemed to be general agreement that courts can provide relief to defendants against inordinate delay by the EEOC. See *Occidental Life Ins. Co. of Cal.* v. *EEOC*, 432 U. S. 355, 373 (1977). Cf. *id.*, at 383 (REHNQUIST, J., dissenting in part) ("Since here the suit is to recover backpay for an individual that could have brought her own suit, it is impossible to think that the EEOC was suing in the sovereign capacity of the United States").

JUSTICE O'CONNOR, with whom THE CHIEF JUSTICE joins, with whom JUSTICE SCALIA and JUSTICE KENNEDY join as to all but Part I, and with whom JUSTICE BREYER joins as to Part I, concurring in part and dissenting in part.

I join Part II–A of the Court's opinion because I agree that Title VII suits based on discrete discriminatory acts are time barred when the plaintiff fails to file a charge with the Equal Employment Opportunity Commission (EEOC) within the 180- or 300-day time period designated in the statute. 42 U. S. C. § 2000e–5(e)(1).   I dissent from the remainder of the Court's opinion, however, because I believe a similar restriction applies to all types of Title VII suits, including those based on a claim that a plaintiff has been subjected to a hostile work environment.

I

The Court today holds that, for discrete discriminatory acts, § 2000e–5(e)(1) serves as a form of statute of limitations, barring recovery for actions that take place outside the charge-filing period.   The Court acknowledges, however, that this limitations period may be adjusted by equitable doctrines.   See *ante*, at 114, n. 7; see also *Zipes* v. *Trans World Airlines, Inc.*, 455 U. S. 385, 393 (1982) ("We hold that filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling").   Like the Court, I see no need to resolve fully the application of the discovery rule to claims based on discrete discriminatory acts.   See *ante*, at 114, n. 7.   I believe, however, that some version of the discovery rule applies to discrete-act claims.   See 2 B. Lindemann & P. Grossman, Employment Discrimination Law 1349 (3d ed. 1996) ("Although [Supreme Court precedents] seem to establish a relatively simple 'notice' rule as to when discrimination 'occurs' (so as to start the running of the charge-filing period), courts continue to disagree on what

the notice must be *of*" (emphasis in original)). In my view, therefore, the charge-filing period precludes recovery based on discrete actions that occurred more than 180 or 300 days after the employee had, or should have had, notice of the discriminatory act.

## II

Unlike the Court, I would hold that § 2000e–5(e)(1) serves as a limitations period for all actions brought under Title VII, including those alleging discrimination by being subjected to a hostile working environment. Section 2000e–5(e)(1) provides that a plaintiff must file a charge with the EEOC within 180 or 300 days "after the alleged unlawful employment practice occurred."* It draws no distinction between claims based on discrete acts and claims based on hostile work environments. If a plaintiff fails to file a charge within that time period, liability may not be assessed, and damages must not be awarded, for that part of the hostile environment that occurred outside the charge-filing period.

The Court's conclusion to the contrary is based on a characterization of hostile environment discrimination as composing a single claim based on conduct potentially spanning several years. See *ante*, at 117. I agree with this characterization. I disagree, however, with the Court's conclusion that, because of the cumulative nature of the violation, if any conduct forming part of the violation occurs within the charge-filing period, liability can be proved and damages can be collected for the entire hostile environment. Although a hostile environment claim is, by its nature, a general atmosphere of discrimination not completely reducible to particular discriminatory acts, each day the worker is exposed to the hostile environment may still be treated as a separate "occurrence," and claims based on some of those occurrences

---

*This case provides no occasion to determine whether the discovery rule operates in the context of hostile work environment claims.

forfeited. In other words, a hostile environment is a form of discrimination that occurs every day; some of those daily occurrences may be time barred, while others are not.

The Court's treatment of hostile environment claims as constituting a single occurrence leads to results that contradict the policies behind 42 U. S. C. § 2000e–5(e)(1). Consider an employee who has been subjected to a hostile work environment for 10 years. Under the Court's approach, such an employee may, subject only to the uncertain restrictions of equity, see *ante*, at 122, sleep on his or her rights for a decade, bringing suit only in year 11 based in part on actions for which a charge could, and should, have been filed many years previously in accordance with the statutory mandate. § 2000e–5(e)(1) ("A charge under this section shall be filed [within 180 or 300 days] after the alleged unlawful employment practice occurred"). Allowing suits based on such remote actions raises all of the problems that statutes of limitations and other similar time limitations are designed to address:

> "Statutes of limitation . . . promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them." *Railroad Telegraphers* v. *Railway Express Agency, Inc.*, 321 U. S. 342, 348–349 (1944).

Although the statute's 2-year limitation on backpay partially addresses these concerns, § 2000e–5(g)(1), under the Court's view, liability may still be assessed and other sorts of damages (such as damages for pain and suffering) awarded based on long-past occurrences. An employer asked to defend such stale actions, when a suit challenging them could have

been brought in a much more timely manner, may rightly complain of precisely this sort of unjust treatment.

The Court is correct that nothing in § 2000e–5(e)(1) can be read as imposing a cap on damages. But reading § 2000e–5(e)(1) to require that a plaintiff bring an EEOC charge within 180 or 300 days of the time individual incidents constituting a hostile work environment occur or lose the ability to bring suit based on those incidents is not equivalent to transforming it into a damages cap. The limitation is one on *liability*. The restriction on damages for occurrences too far in the past follows only as an obvious consequence.

Nor, as the Court claims, would reading § 2000e–5(e)(1) as limiting hostile environment claims conflict with Title VII's allowance of backpay liability for a period of up to two years prior to a charge's filing. § 2000e–5(g)(1). Because of the potential adjustments to the charge-filing period based on equitable doctrines, two years of backpay will sometimes be available even under my view. For example, two years of backpay may be available where an employee failed to file a timely charge with the EEOC because his employer deceived him in order to conceal the existence of a discrimination claim.

The Court also argues that it makes "little sense" to base relief on the charge-filing period, since that period varies depending on whether the State or political subdivision where the violation occurs has designated an agency to deal with such claims. See *ante*, at 119. The Court concludes that "[s]urely . . . we cannot import such a limiting principle . . . where its effect would be to make the reviewable time period for liability dependent upon whether an employee lives in a State that has its own remedial scheme." *Ante*, at 120. But this is precisely the principle the Court has adopted for discrete discriminatory acts—depending on where a plaintiff lives, the time period changes as to which discrete discriminatory actions may be reviewed. The justification for the variation is the same for discrete discrimina-

tory acts as it is for claims based on hostile work environments. The longer time period is intended to give States and other political subdivisions time to review claims themselves, if they have a mechanism for doing so. The same rationale applies to review of the daily occurrences that make up a part of a hostile environment claim.

My approach is also consistent with that taken by the Court in other contexts. When describing an ongoing antitrust violation, for instance, we have stated:

> "[E]ach overt act that is part of the violation and that injures the plaintiff . . . starts the statutory [limitations] period running again, regardless of the plaintiff's knowledge of the alleged illegality at much earlier times. . . . But the commission of a separate new overt act generally does not permit the plaintiff to recover for the injury caused by old overt acts outside the limitations period." *Klehr* v. *A. O. Smith Corp.*, 521 U. S. 179, 189 (1997) (citations omitted).

Similarly, in actions under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U. S. C. § 1961 *et seq.*, concerning a pattern of racketeering activity, we rejected a rule that would have allowed plaintiffs to recover for all of the acts that made up the pattern so long as at least one occurred within the limitations period. In doing so, we endorsed the rule of several Circuits that, although "commission of a separable, new predicate act within [the] limitations period permits a plaintiff to recover for the additional damages caused by that act . . . the plaintiff cannot use an independent, new predicate act as a bootstrap to recover for injuries caused by other earlier predicate acts that took place outside the limitations period." 521 U. S., at 190; but cf. *Rotella* v. *Wood*, 528 U. S. 549, 554, n. 2, 557 (2000) (reserving the question of whether the injury discovery rule applies in civil RICO and, by extension, Clayton Act cases). The Court today allows precisely this sort of bootstrapping in the Title

VII context; plaintiffs may recover for exposure to a hostile environment whose time has long passed simply because the hostile environment has continued into the charge-filing period.

I would, therefore, reverse the judgment of the Court of Appeals in its entirety.