**Juanita WASHINGTON,**
**Plaintiff–Appellant,**

v.

**AMERICAN DRUG STORES, INC.,**
**d/b/a Osco Drug Stores,**
**Defendant–Appellee.**

No. 04–2011.

United States Court of Appeals,
Seventh Circuit.

Submitted Nov. 30, 2004.*

Decided Nov. 30, 2004.

---

* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

Juanita Washington, Chicago Heights, IL, Plaintiff–Appellant Pro Se.

Lisa A. Wetzel, Matkov, Salzman, Madoff & Gunn, Chicago, IL, for Defendant–Appellee.

Before RIPPLE, KANNE, and WILLIAMS, Circuit Judges.

## ORDER

Juanita Washington, an African American woman, sued her employer, Osco Drug Store, under Title VII, 28 U.S.C. §§ 2000e *et seq.*, and the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.*, alleging race and age discrimination, retaliation and a hostile work environment. The district court granted summary judgment in favor of the defendant and we affirm.

The following facts are undisputed. Osco hired Mrs. Washington in 1977 and promoted her to a supervisory position in 1986. In 1998 she filed an earlier discrimination lawsuit against Osco that ended in summary judgment against her. *Washington v. Osco Drug Co.*, No. 98–C–1439, 1999 WL 966092 (N.D.Ill. Oct. 14, 1999), *aff'd sub nom. Washington v. American Stores Co., Inc.*, No. 99–3957, 2000 WL 1234310 (7th Cir. Aug.30, 2000). In 2000, she transferred to a Jewel–Osco store in Homewood, Illinois, where she remained an Osco supervisor.

The first incident of discrimination that Mrs. Washington points to here occurred in April 2001, when an employee of the companion Jewel grocery store made a racist remark in her presence. She says she overheard that employee tell another Jewel employee: "I'm tired of these lazy sons of bitches not doing their work. They must think I'm some kind of goddamn mother fucking nigger." Mrs. Washington complained about this remark to management, who investigated and suspended the employee without pay for one week.

Mrs. Washington also points to several actions taken by the store director, Greg Cerven, that she characterizes as continuing harassment. First, after she complained about the racist remark, she says that Mr. Cerven repeatedly criticized her performance as supervisor responsible for

ensuring the proper scanning of items purchased at the check-out counter. Second, she says that Mr. Cerven ultimately stripped her of the scanning coordinator duties (these were reassigned to a younger African American woman) and reassigned her to a supervisory position for feminine and baby products. Finally, she says that after her reassignment, Mr. Cerven stopped talking to her entirely, and instead relayed instructions to her by e-mail or through other employees.

Mrs. Washington points to two other incidents of discrimination against her by Osco. First, in October 2001, she was denied a raise, though the store's two youngest supervisors both received raises. Second, in May 2002 she missed the opportunity to attend two corporate meetings she asserts were held for "improving supervisor performance," because Mr. Cerven failed to inform her about them, though he did inform the store's two youngest supervisors.

In August 2002 Mrs. Washington filed charges with the Illinois Department of Human Rights (IDHR) and, upon receiving a right-to-sue letter, filed a timely complaint in the district court. She alleged that Osco demoted her and denied her wage increases because of her race and age as well as in retaliation for complaining about the racial slur and for filing the 1998 lawsuit. She also alleged a hostile work environment based on the Jewel employee's racial slur and Mr. Cerven's hostility and subsequent silent treatment.

The district court granted summary judgment for Osco, finding that, with the exception of her "training" claim, all of the conduct she complained about was time-barred because it occurred outside the 300–day window preceding the filing of her complaint with the IDHR. Moreover, the court found none of the conduct of which she complained ---- including her training

claim ---- was a materially adverse employment action. The court also found that Mrs. Washington's other complaints of harassment were "too insignificant" to constitute a violation of Title VII.

Mrs. Washington's appellate brief contains scarce analysis and raises only vague challenges to the district court's order. Moreover, the brief lacks citations to the record in violation of Fed. R.App. 28(a)(9). Because she is *pro se*, however, we will proceed as best we can to the merits.

 Almost all of the conduct challenged by Mrs. Washington occurred outside the 300–day period of limitations. She asserts that the violations have been ongoing, but as *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114–15, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002), concluded, the continuing-violations doctrine does not allow deferred suit on discrete discriminatory acts just because other forbidden acts occurred within the limitations period. Mrs. Washington's asserted "demotion" and denial of a raise ---- discrete acts under *Morgan* ---- occurred before October 31, 2001, the start of the limitations period, and are therefore time-barred. Moreover, as the district court found, her "training claim," though it occurred within the filing period, was not a materially adverse employment action. *See Herrnreiter v. Chicago Housing Authority*, 315 F.3d 742, 744–45 (7th Cir.2002)(explaining that a materially adverse employment action does not exist without a quantitative or qualitative change in the terms or conditions of employment).

 Mrs. Washington also generally challenges the district court's grant of summary judgment to Osco on her hostile work environment claim, arguing that the following acts taken together created a hostile working environment. She contends that the harassment began with the

racial slur in April 2001 and continued with Mr. Cerven's subsequent criticism, which ended only in October 2001, when he reassigned her from her scanning coordinator duties. Mr. Cerven persisted in harassing her during the limitations period, she claims, by giving her the silent treatment and failing to inform her of two upcoming corporate meetings for supervisors.

To establish a hostile work environment, a plaintiff must show that she was subjected to harassment so severe or pervasive that it altered the conditions of her employment, making it hellish. *See Williams v. Waste Mgt. of Ill.,* 361 F.3d 1021, 1029 (7th Cir.2004). *Wyninger v. New Venture Gear, Inc.,* 361 F.3d 965, 975–77 (7th Cir. 2004). The handful of incidents described by her occurred over more than thirteen months. Because these incidents were sporadic, isolated and appear unrelated, the district court properly found that Mrs. Washington failed to show that her workplace was hellish. *See Wyninger,* 361 F.3d at 977. *See Patton v. Indianapolis Pub. Sch. Bd.,* 276 F.3d 334, 339 (7th Cir.2002) (rejecting hostile work environment claim even though plaintiff's supervisors treated her rudely, ignored her suggestions, failed to communicate changes at work, and severely criticized her without good reason because "a reasonable jury could not have determined this treatment to be so severe or pervasive as to alter the plaintiff's conditions of employment in a significant way."). The district court's judgment is AFFIRMED.

Also before the court are Mrs. Washington's pending motions, filed on November 10, 2004, for leave to proceed in forma pauperis and for appointment of counsel. Because this court received notification on October 16, 2004 that Mrs. Washington has paid the required appellate filing fees, the motion to proceed in forma pauperis is DENIED as moot. The motion for appointment of counsel is also DENIED.