NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-3377
_____

EMILY WILSON,

Appellant

v.

SECRETARY OF AGRICULTURE
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 09-cv-00787)
District Judge:  Honorable Thomas N. O'Neill, Junior
_____

Submitted Under Third Circuit LAR 34.1(a)
April 26, 2011

Before:  BARRY, HARDIMAN and NYGAARD, *Circuit Judges*.

(Filed: April 27, 2011)
_____

OPINION OF THE COURT
_____

HARDIMAN, *Circuit Judge*.

Emily Wilson appeals the District Court's summary judgment on her Title VII

claims for gender discrimination, retaliation, and hostile work environment.  We will

affirm, essentially for the reasons stated by the District Court in its careful and thorough

opinion.

I

Because we write for the parties, we recount only the essential facts, and we do so in the light most favorable to Wilson.

Wilson worked as a program technician at the Consolidated Farm Service Agency[1] (CFSA) in Bucks County, Pennsylvania from 2002 to 2007.

In 2004, Wilson's supervisor, County Executive Director Darrell Tribue, filed a complaint with the CFSA's Equal Employment Opportunity Office (EEO), alleging that he had been wrongfully disciplined after protesting the consolidation of two CFSA offices. Tribue later stated that Wilson "was called as a witness" in the 2004 complaint.

In 2006, CFSA's Deputy Administrator for Field Operations (DAFO) in Washington, D.C. adopted a plan to correct perceived staffing disparities across Pennsylvania's CFSA offices. In response to this initiative, the Pennsylvania State Committee directed the Bucks County Committee to reassign one of its workers to Chester County. The Bucks County Committee selected Wilson—the most recent hire— for reassignment, but expressed its displeasure at having to reassign one of its "valued staff members."

On December 15, 2006, Wilson received a letter from the State Committee

---

[1] The CFSA is a branch of the United States Department of Agriculture that administers federal conservation and agricultural credit programs through state and county committees.

2

offering her a position in Chester County and warning her that if she "refuse[d] to accept this reassignment, it may be necessary to separate [her] from the service." Wilson declined the position and failed to report to work as required by the reassignment. Nine days later, on February 27, 2007, the State Committee notified Wilson that her employment was slated for termination within thirty days and offered her the chance to respond verbally or in writing to the proposed termination.

On March 8, 2007, Wilson's counsel sent a "notice of a formal charge of retaliation" to Richard Pallman, the Executive Director of the State Committee. The letter alleged that the Committee failed "to afford Ms. Wilson the same privileges, terms and conditions of employment as other employees who declined to accept reassignment beyond the established local commuting area." The State Committee did not respond to Wilson's March 8th letter and sent formal notice of her discharge on April 2, 2007. Two days later, CFSA offered Wilson $3,955.80 in severance pay, which she eventually accepted. Wilson also requested an administrative hearing before the DAFO, pursuant to CFSA's Employee Handbook 22-PM. The DAFO responded that it would hold the hearing "in abeyance pending possible settlement" of her claims in EEO mediation.

Unsatisfied with the conduct of the agency, Wilson brought suit in the District Court for the Eastern District of Pennsylvania, alleging gender discrimination, retaliation, and hostile work environment, all in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. The District Court entered summary judgment against

3

Wilson, holding that she could not show that the Secretary's stated reason for termination was pretextual. The District Court also found the record devoid of evidence to support her hostile work environment claim. This timely appeal followed.[2]

## II

We review the District Court's summary judgment *de novo*, and apply the same standard as the District Court. *Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010).

## A

Wilson alleged that her reassignment and termination were motivated by gender. As the District Court correctly noted, Wilson's reassignment claim is a non-starter because the Bucks County Committee selected Wilson for reassignment, and Wilson never claimed that the County Committee discriminated against her on the basis of gender.

With regard to Wilson's termination claim, the District Court assumed that Wilson satisfied the prima facie case under *McDonnell Douglas*, but held that she could not show pretext. Wilson argues on appeal that the District Court erroneously discounted evidence in the record that the Bucks County Office was understaffed. But this fact, assuming it is true, bears only on Wilson's reassignment claim, not her termination claim.

Wilson also contends the District Court erred in finding no evidence that the State

---

[2] The District Court had jurisdiction pursuant to 28 U.S.C. § 1331. We have

Committee "treated other, similarly situated [male employees] . . . more favorably" than it treated her. *See Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994). We disagree. The District Court correctly noted that Wilson cited no valid comparator. Although Wilson adverted to fourteen male employees of CFSA who were not terminated, she proffered nothing about them other than their names. This falls well short of satisfying her burden under *Fuentes*.

Finally, Wilson argues that the State Committee's failure to follow its own policies is evidence of pretext. We perceive no error in the District Court's analysis in this respect. Wilson received the severance pay to which she was entitled, the agency was permitted to hold the DAFO hearing in abeyance pending mediation of Wilson's EEO claim, and regardless of the accuracy of her supervisor's testimony that the termination was "disciplinary," the State Committee had a right to terminate Wilson after she failed to report for duty.

For these reasons, we will affirm the District Court's summary judgment on Wilson's claim for gender discrimination.

B

Wilson also alleged retaliatory discharge on the basis of her participation in Tribue's EEO complaint and her objections to CFSA's proposed reassignment and termination. The District Court found no causal link between these protected activities

---

jurisdiction pursuant to 28 U.S.C. § 1291.

and Wilson's termination.  *See Weston v. Pennsylvania*, 251 F.3d 420, 430 (3d Cir. 2001).

On appeal, Wilson points to Tribue's testimony that she "was called as a witness" in his 2004 complaint for wrongful discipline.  However, Wilson testified at her deposition that her name never appeared on a witness list and she never testified before the EEO.  The District Court did not err in relying upon Wilson's testimony to find that the State Committee was unaware of her EEO activity when it terminated her in 2007.

Wilson also claims she was targeted for termination because the Bucks County Committee protested her proposed reassignment in October and November of 2006.  However, the Bucks County Committee merely noted its disagreement with the State Committee's decision to reassign one its "valued staff members."  If anything, these protestations demonstrate that although the County Committee was forced to reassign one of its workers, its decision to nominate Wilson was entirely within its control.

Nor did Wilson adduce any evidence supporting her claim that she was retaliated against because of her March 8, 2007 letter.  As the District Court found, the State Committee had already resolved to discharge Wilson well before she sent this letter.  The December 15, 2006 letter specifically warned Wilson of that possibility and Wilson conceded that she reviewed the CFSA's policy in this regard.  And although Wilson's final termination notice came after the March 8, 2007 letter, it adopted the language of February's proposed termination in its entirety and came, as promised, thirty-three days after Wilson received notice of her potential termination.

6

Accordingly, the District Court did not err in entering summary judgment against Wilson on her retaliation claim.

C

Turning to Wilson's hostile work environment claim, we agree with the District Court that "[t]he record is completely devoid of evidence that plaintiff's workplace was hostile or abusive." To survive summary judgment on a claim for hostile work environment, Wilson had to present some evidence that her workplace was "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002) (internal quotation marks omitted).

Because the factual record adduced at the summary judgment stage fell well below this high standard, the District Court did not err in this regard and we will affirm its judgment in all respects.

7