JANE B. STRANCH, Circuit Judge,
dissenting.
I respectfully dissent from the majority opinion because I believe the record contains sufficient facts to withstand summary judgment on Plaintiffs’ hostile work environment claims. As the EEOC summarized in its amicus brief, the record demonstrates ongoing repetition of highly offensive racial insults — including the words “nigger,” “Buckwheat,” “boy,” “monkey,” and variations on these offensive racial pejoratives — spanning several decades and manifested in several different forms, including verbal insults, written graffiti, insulting caricatures, musical lyrics, and jokes. Much of this conduct occurred in public areas of the warehouse and was thus either actually seen by many employees or was likely seen by many employees. For example, an effigy was hung twenty feet from the floor (in an area “where everybody comes to charge their machines”) with an accompanying cardboard sign bearing an African-American supervisor’s name and the words “nigger supervisor.” The effigy was not removed until several days later, “[long] enough for all the warehouse to see it,” according to one of the employees.
I trust it is uncontroversial that the totality of all the incidents alleged by the Plaintiffs would be sufficiently “severe or pervasive” to constitute a hostile work environment. I am troubled, then, that the Plaintiffs are barred from their day in court, not because of the conduct to which they were subjected, but because their attorney did not undertake the tedious and seemingly unnecessary task of listing each of the numerous incidents separately for the five Plaintiffs in this appeal (not to mention the additional six members of the initial lawsuit), presumably in individual briefs.
I am further concerned because it appears that the Defendant was allowed to *721 create this repetitive-listing burden by the mere expedient of filing separate motions for summary judgment as to each Plaintiff. The Plaintiffs did not file separate complaints and they would not have had separate trials. This case was originally filed as a class action lawsuit by all the Plaintiffs and it proceeded as an action by a group of Plaintiffs concerning their work environment. It begs credulity to suggest that the Plaintiffs were not well aware of each other’s problems at work. Access to one’s day in court should not be destroyed by a pleading mechanism that results in a presumption of an individual, segregated work environment for each Plaintiff when, in fact, those Plaintiffs indisputably worked together, shared their work environment concerns with one another, and then joined together to file one lawsuit with the same claims and the same attorney.
This case comes to us at the summary judgment stage at which we need only consider whether “[ujnder the facts as alleged in this case, viewed in their entirety and in their proper context, we believe a rational trier of fact could conclude that [Plaintiffs were] subjected to a hostile work environment.” Williams v. Gen. Motors Corp., 187 F.3d 553, 563 (6th Cir.1999). A case should not be summarily dismissed if “at minimum, the allegations raise a question of fact for the jury.” Id. Here, the sheer number of racially-hostile incidents that the Plaintiffs testified occurred in public areas at the same company over many years at minimum raised a question of fact as to whether the Plaintiffs were subjected to a hostile work environment.
This Court has made clear that summary judgment is inappropriate whenever a plaintiff alleges harassment that is “ongoing,” “commonplace,” and “continuing.” Hawkins v. Anheuser-Busch, Inc., 517 F.3d 321, 333-34 (6th Cir.2008) (quoting Abeita v. TransAmerica Mailings, Inc., 159 F.3d 246, 252 (6th Cir.1998)). A plaintiff who satisfies this standard need not allege each and every incident, much less actual knowledge thereof, because “when a victim makes allegations of ongoing harassment, the ‘inability to recount any more specific instances goes to the weight of [the victim’s] testimony, a matter for the finder of facts.’ ” Id. (same).
I find the. sheer number and duration of offensive incidents on the record sufficient to be considered “ongoing.” In addition to the specific types of grossly offensive racial harassment summarized above, the Plaintiffs specifically alleged in their complaint that they were: (1) “routinely assigned to heavy orders despite assurances that the assignments are randomly assigned,” (2) “subjected to more drug testing than white employees,” (3) “routinely ordered back to work while white employees are ignored by management, even though everyone started their break at the same time,” (4) “never ... approached about having a supervisory position within Supervalu,” (5) “denied training while white employees with less seniority were given training,” (6) “disciplined for mistakes or being out of their work area while other white employees are not disciplined for the same actions,” and (7) “denied overtime or discouraged from signing up for overtime only to discover that white employees with less seniority worked overtime.”
Examples of this ongoing conduct are reviewed and highlighted elsewhere in the record. In Plaintiff Berryman’s interrogatory responses, for example, he stated that he was (1) written up for being out of his work area while white employees were not, (2) denied training received by white employees with less seniority, (3) “given [a] larger workload to do by himself while white employees are given [a] smaller *722 workload to do with assistance,” (4) told to get back to work when talking to a black co-worker while white employees were allowed to continue talking, (5) subjected to other employees looking up his work statistics and making comments about his statistics and race, despite repeated complaints to supervisors, (6) “discipline^] for using the word ‘bitch’ while the white employee ... he was talking to was not disciplined for using the phrase ‘black ass,’ ” (7) “approached in the break room and told to go back to work by a supervisor ... who did not instruct the white employees in the break room to go back to work,” (8) aware of “job[s] being held for white employees who are not present at the job selection meeting when their names are called while black employees are automatically skipped if not present when their name is called.” I believe that the testimony of these types of repeated, racially-motived actions in the workplace, which is basically ignored in the majority’s opinion, should have been sufficient to overcome summary judgment under the Abeita standard.
To the extent that Jackson v. Quanex Corp. requires a plaintiff to prove knowledge of events giving rise to a hostile work environment claim, it squarely holds that a plaintiff must be permitted to introduce evidence from co-workers in order “to present evidence of events at [a company] giving rise to the hostile environment there” from which “reasonable jurors” could conclude that the plaintiff “was the victim of’ such an environment. 191 F.3d 647, 659 (6th Cir.1999). Such a rule makes good sense in this context because, as the Supreme Court recognized, “the entire hostile work environment encompasses a single unlawful employment practice” rather than discrete isolated events. Nat’l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 115-18, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002); see also Jackson, 191 F.3d at 660 (quoting Black’s Law Dictionary 534 (6th ed. 1990)) (“[T]he very meaning of ‘environment’ is ‘[t]he surrounding conditions, influences or forces which influence or modify.’ ”). The Plaintiffs here are merely trying to do through their co-Plaintiffs what the Jackson plaintiff was allowed to do with non-plaintiff coworkers: present evidence of the hostile work environment in order to overcome summary judgment. And, as the majority correctly observes, courts should consider in the hostile work environment analysis all incidents about which a plaintiff learns secondhand. Jackson, 191 F.3d at 661.
It is true that because the workplace at SuperValu included two warehouses and three bathrooms, SuperValu can dispute whether the Plaintiffs were “unavoidably exposed” to every incident and had “no means of escaping.” See Gallagher v. C.H. Robinson Worldwide, Inc., 567 F.3d 263, 273 (6th Cir.2009). However, given the number of Plaintiffs, the proximity in which they worked, the public nature of many of the incidents, and the duration of these events, the size of the workplace does not remove this case from the category of cases presenting disputes of material fact that must be decided by the jury. That every event was not specifically mentioned in every deposition or listed under every name in the non-inclusive summary prepared by counsel for our convenience does not and should not alter this outcome.
The egregious facts in this record are sufficient to generate a dispute of material fact as to whether Plaintiffs’ work environment was hostile. That is all that is necessary to deny summary judgment to the Defendant. Accordingly, I respectfully dissent.