**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 2, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

CONNIE M. CARRASCO,

      Plaintiff-Appellant,

v.

THE BOEING COMPANY,

      Defendant-Appellee.

No. 05-3219
(District of Kansas)
(D.C. No. 04-CV-1166-MLB)

**ORDER AND JUDGMENT**[*]

Before **MURPHY**, **EBEL**, and **McCONNELL**, Circuit Judges.

I.      **Introduction**

      Appellant Connie Carrasco sued her former employer, The Boeing

Company ("Boeing"), for hostile work environment sexual harassment under Title

VII of the Civil Rights Act of 1964.  The United States District Court for the

District of Kansas granted summary judgment to Boeing, concluding Carrasco

failed to produce sufficient evidence from which a reasonable jury could conclude

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata and collateral estoppel.  The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

the alleged harassment was so severe or pervasive as to create Title VII liability. Carrasco appeals, alleging the district court failed to properly consider all the relevant evidence. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and **affirm**.

## II.    Background

Carrasco worked as an hourly employee for Boeing from 1987 until June 27, 2002. For a portion of this time, Carrasco's second-level manager was James Hans. Hans began his employment with Boeing in May 1988 and became a manager in 1990. Carrasco alleges Hans engaged in a pattern of sexual harassment that began in 1988 and continued until she left Boeing.

Many of the incidents upon which Carrasco relies to support her claim occurred prior to June 2001. Carrasco asserts that in 1988 or 1989, Hans made repeated comments about her feet, indicating he liked the way they looked in a particular shoe and remarking they were "so tiny that it turns me on." When Hans moved from an hourly position to a managerial position at Boeing in 1990, he indicated to Carraso that he would be earning more money and asked her to be his mistress. According to Carrasco, she responded by laughing at Hans and rejecting the offer. Notwithstanding the rebuff, Hans told Carrasco in 1992 that he fantasized about the two of them "being together" and several years later asked Carrasco to take a vacation day so they could "go get a hotel." Carrasco also alleges Hans once told her, "I can tell that you have gained weight because your

-2-

jeans are tight in all the right places." Carrasco could not recall the date on which this comment was made although she testified it was some time between 1997 and 2002. In June 2000, while Hans and Carrasco were reviewing a document in Hans' office, Hans told Carrasco her perfume smelled good and then sought the name of the fragrance so he could buy some for his wife.

Carrasco alleges Hans' inappropriate behavior continued after June 2001. Some time in the summer of 2001, Hans approached Carrasco and told her he thought her shorts were shorter than permitted by Boeing's dress code. Hans told Carrasco it would be necessary for him to measure her shorts "from the inside of [her] thigh." The same summer, Hans asked Carrasco whether she tanned naked and indicated he would like to see for himself whether she had any tan lines. He also leaned over the back of her shoulder and whispered that he liked her new haircut. In the fall of 2001, Hans asked Carrasco several times to show him her thong underwear.

On May 8, 2002, Carrasco contacted Boeing's in-house Equal Employment Opportunity Department investigator, Mary Avila, about Hans' behavior toward her. Avila investigated Carrasco's complaint but only considered incidents occurring within the prior twelve-month period. After the investigation was completed, Carrasco was told her claims could not be substantiated.

Approximately one month after contacting Avila, Carrasco received notice that she was being downgraded from her polisher position to a painter position.[1] As a painter, Carrasco would be assigned to work under Hans' supervision. Carrasco declined the painter position and, instead, accepted an accelerated layoff.[2] Carrasco received a lump-sum layoff benefit and forfeited any right to be recalled by Boeing.

Carrasco filed a complaint with the Kansas Human Rights Commission on August 6, 2002, alleging Boeing retaliated against her for opposing acts and practices forbidden by the Kansas Act Against Discrimination. *See* Kan. Stat. Ann. § 44-1001 to -1044. An amended complaint was filed to include a charge of sex discrimination. Both complaints contained the following allegation from Carrasco:

> From June 2001, to June 14, 2002, I was subjected to harassment from a male supervisor whom I had filed grievances against concerning sexual harassment. The harassment consisted of having my work more closely scrutinized, being subjected to an unwarranted reprimand, and being subjected to being followed and taunted. Although I reported the harassment to upper management, nothing was done to effectively stop it.

---

[1]Beginning in 2001, Boeing reduced its workforce in Wichita, Kansas by more than one-third.

[2]Although Carrasco stated she declined the painter position because she did not want to be assigned to Hans' work area, she told Mary Avila that, "[e]ven if management and personnel find a place for me in an area not under Jim Hans, I will not accept it."

After Carrasco received a right to sue letter from the United States Equal Employment Opportunity Commission, she filed this action in federal district court pursuant to Title VII of the Civil Rights Act of 1964,[3] alleging hostile work environment sexual harassment and retaliation. In her complaint, Carrasco specifically stated she was subjected to sexual harassment "[f]rom June 2001 to June 14, 2002." She repeated this statement in the pretrial order. Boeing moved for summary judgment and the district court granted the motion, ruling, *inter alia*, no reasonable jury could conclude Hans' conduct was severe or pervasive enough to establish a claim of hostile work environment.[4]

## III. Discussion

This court reviews a district court's grant of summary judgment *de novo*, applying the same legal standard used by the district court. *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1124 (10th Cir. 2005). To affirm the district court, we must satisfy ourselves that the pleadings and admissible evidence demonstrate "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). We "view the

---

[3]Although Carrasco's complaint contains an allegation that Boeing's actions violated the Kansas Act Against Discrimination, the pretrial order indicates Carrasco dismissed her state statutory claims.

[4]The district court also concluded Carrasco's constructive discharge claim was not properly before the court and that Carrasco had abandoned her retaliation claim. Carrasco does not challenge either of these rulings in this appeal.

evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Bryant*, 432 F.3d at 1124.

Pursuant to Title VII of the Civil Rights Act of 1964, it is "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). If a plaintiff proves that "discrimination based on sex has created a hostile or abusive work environment," she has established a violation of Title VII. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986); *see also Bolden v. PRC Inc.*, 43 F.3d 545, 550 (10th Cir. 1994). "To constitute actionable harassment, the conduct must be sufficiently severe or pervasive to alter the conditions of [the plaintiff's] employment and create an abusive working environment." *Bolden*, 43 F.3d at 550-51 (quotations omitted). A plaintiff can show that harassment is severe or pervasive enough to implicate Title VII if she satisfies a two-part test. Specifically, she must show (1) the conduct "create[d] an objectively hostile or abusive work environment–an environment that a reasonable person would find hostile or abusive" and (2) she "subjectively perceive[d] the environment to be abusive." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). Accordingly, to survive summary judgment, Carrasco was required to present sufficient evidence from which a reasonable jury could find that Hans' conduct created both an objectively and subjectively

-6-

sexually hostile work environment. *See Davis v. U.S. Postal Serv.*, 142 F.3d 1334, 1341 (10th Cir. 1998).

"[D]etermining whether an actionable hostile work environment claim exists" requires an examination of "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002) (quotations omitted). When evaluating Carrasco's claim, the district court refused to give consideration to incidents that occurred before June 2001. Boeing asserts the district court properly refused to consider those incidents because Carrasco's complaint and the pretrial order confine Carrasco's hostile work environment claim to the period between June 2001 and June 14, 2002. Although Carrasco's appellate argument relies, in part, on encounters that occurred prior to June 2001, she makes no argument under *Morgan* that the district court's ruling limiting her evidence to the period between June 2001 and June 14, 2002 was erroneous. Accordingly, this court, too, will consider only evidence of incidents occurring from June 2001 to June 14, 2002.

The pretrial order contains Carrasco's contention that Hans made four harassing statements to her between June 2001 and June 14, 2002. During the summer of 2001, Hans asked Carrasco if he could measure her shorts from the inside of her thigh, asked her if she tanned naked, and whispered in her ear that

he liked her haircut. In the fall of 2001, Hans asked Carrasco several times if he could see her thong underwear. Carrasco argues on appeal that the district court erroneously refused to consider evidence of other incidents that occurred between June 2001 and June 14, 2002. This evidence consists of the deposition testimony of Carrasco's coworker, Dana Norris. Carrasco, however, made only broad references to Norris' testimony in her memorandum opposing Boeing's motion for summary judgment. Nevertheless, she attempts to fault the district court for failing to consider the specific incidents about which Norris testified. We reject any suggestion the district court was responsible for sifting though the record, specifically the deposition testimony of Norris, to marshal Carrasco's evidence for her.

In any event, the portion of Ms. Norris' deposition testimony which Carrasco has included in the appellate record concerns Norris' employment at Boeing from October 1999 to November 2001. This testimony is not specific as to time or date and Norris stated she could not remember all the dates on which she and Carrasco worked the same shift. The record indicates that Hans and Carrasco worked together on the first shift from July 9, 2001 to June 20, 2002. Immediately prior to July 9, 2001, Carrasco worked the second shift and Hans worked the first shift. Norris testified that she was working the second shift at the time she left Boeing in November 2001. Carrasco does not argue or present any evidence that she, Norris, and Hans worked the same shift from June 2001 to

-8-

November 2001. Thus, although Norris testified that "everywhere you looked, [Hans] was standing right there beside [Carrasco]" and that Hans followed Carrasco "everywhere," it is impossible to determine from the record before us whether any of Norris' testimony relates to incidents occurring between Carrasco and Hans within the relevant time period of June 2001 to June 14, 2002.

Having concluded the district court did not err in considering only the four specific statements Hans made to Carrasco in the summer of 2001 and fall of 2002, we also conclude the district court did not err when it granted summary judgment in favor of Boeing. Based on our *de novo* review of the parties' briefs and contentions, the district court's order, and the entire record on appeal, we are convinced no reasonable jury could find from the relevant evidence that Carrasco's workplace was "permeated with discriminatory intimidation, ridicule, and insult . . . sufficiently severe or pervasive to alter the conditions of [her] employment." *Penry v. Fed. Home Loan Bank of Topeka*, 155 F.3d 1257, 1261 (10th Cir. 1998). Accordingly, this court affirms the entry of summary judgment in favor of Boeing on Carrasco's hostile work environment claim for substantially the same reasons stated by the district court in its order dated May 9, 2005.

**IV.	Conclusion**

The judgment of the United States District Court for the District of Kansas

is **affirmed**.

ENTERED FOR THE COURT


Michael R. Murphy
Circuit Judge