NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0081n.06
Filed: February 1, 2007

**No. 05-4613**

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| JACK KOURY; DON CAMPBELL; BENCH SIGNS UNLIMITED, INC., | ) ) ) | |
| Plaintiffs-Appellants. | ) ) | |
| v. | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE |
| CITY OF CANTON, et al., | ) ) | NORTHERN DISTRICT OF OHIO |
| Defendants-Appellees. | ) ) ) | |

**Before: BATCHELDER, GILMAN, and ROGERS, Circuit Judges.**

**ROGERS, Circuit Judge**.  This case involves various federal and state law claims against the City of Canton arising from conduct allegedly motivated by hostility toward a business which had placed benches with advertising at bus stops throughout the city.  Jack Koury, Don Campbell, and Bench Signs Unlimited, Inc. ("Bench Signs") allege that the city and several city officials violated Bench Signs' First, Fourth, Fifth, and Fourteenth Amendment rights by selectively enforcing zoning, housing, and other city code provisions and by otherwise disrupting Bench Signs' business activities in Canton.  In addition to these claims under 42 U.S.C. § 1983, Bench Signs asserts various state law claims of tortious interference with contract directly related to the conflict over the benches.

- 1 -

Bench Signs bases its claims on numerous and often unrelated encounters with the city over the course of a decade. The district court entered summary judgment as to the bulk of Bench Signs' claims because the claims were either barred by the applicable statute of limitations or precluded by a prior judgment. With respect to the remaining § 1983 claims, the district court held that Bench Signs failed to provide sufficient evidence of a violation of its constitutional rights. As to the remaining state law claim, the district court concluded that Bench Signs failed to provide sufficient evidence to establish tortious interference with contract. The district court properly granted summary judgment as to all of Bench Signs' claims, and we therefore affirm the judgment.

I.

Jack Koury and Don Campbell formed Bench Signs Unlimited in or around 1993. Bench Signs was formed for the purpose of placing concrete benches with advertising throughout the area serviced by the Stark Area Regional Transit Authority (SARTA) pursuant to a contract with SARTA. Before 1994, Canton had no laws specifically addressing the placement of bench signs, though Canton did prohibit the obstruction of sidewalks and other public rights-of-way. In November 1994, the city passed an ordinance regulating the placement of bench signs in Canton. The ordinance included a number of conditions for the placement of bench signs, including obtaining a permit, limiting benches to one per bus stop, and placing benches two feet from and parallel to the street. To comply with the ordinance, Bench Signs, in January 1995, obtained 400 zoning permits upon payment of twenty dollars for each.

The city maintains that, shortly after the issuance of the permits, it began receiving complaints about the illegal placement of some benches. As a result of these complaints, the city issued several demands to Bench Signs to bring benches into compliance with the 1994 ordinance. According to Bench Signs, many of these demands pertained to benches that complied with the ordinance. Bench Signs also contends that the city demanded the removal of benches on impermissible grounds, including the content of their signs.

Bench Signs alleges that in 1998 SARTA terminated its contract with Bench Signs because of false information communicated to SARTA by the city.

The parties' disagreements over the benches sparked multiple state court lawsuits. First, in October 2000, the city filed a complaint against Bench Signs seeking injunctive relief for alleged violations of the 1994 ordinance. In June 2001, the Ohio trial court ordered Bench Signs to remove all its benches and authorized the city to remove any remaining benches after thirty days. Only 166 or 167 of the 400 authorized benches had actually been placed. In July 2001, the city removed the benches and placed them in storage.

Bench Signs appealed that trial court order, and on April 15, 2002, the Ohio Court of Appeals reversed the trial court's decision and remanded the case. On remand, the Ohio trial court determined that only sixty-six of the permits had been properly revoked.

On July 15, 2002, the city enacted a new ordinance that prohibited all bench signs in Canton. On February 10, 2003, the city filed an action in state court seeking a declaration that the 2002 ordinance was valid. Bench Signs filed a counterclaim alleging that the ordinance was not applicable

- 3 -

to it and if it were, then the city must compensate it for a governmental taking. The Ohio courts held that the 2002 ordinance was constitutional and did not constitute a taking.

Co-plaintiff Koury maintains that, after the bench signs controversy arose, he began to experience "unusual problems" with the city. In either 1997 or 1998, the Ohio State Division of Liquor Control denied his application for a liquor license for a drive-through liquor store at 2400 Mahoning. Koury contends that the denial resulted from the city's having objected to the license and that another individual was awarded a license only one or two blocks from his location.

Koury later purchased a commercial building, at 912-914 12th Street, with the intention of opening a drive-through liquor store. On August 2, 1999, at the request of the City Council, the Division of Liquor Control conducted a hearing to determine whether to issue Koury the license requested for this location. Koury contends that the council requested the hearing because he refused to remove a particular bench sign when a council member asked him to do so. On July 7, 2000, the State Division of Liquor Control denied Koury's application for a license at this location. Koury then rented the 12th Street location to an individual who intended to open a beauty parlor and car wash. Koury alleges that the lessee of the property experienced significant problems with obtaining a certificate of housing code compliance from the city because of false allegations of violations concerning newly replaced utility systems.

In or about 2001, Koury purchased a property at 1312 15th Street. Koury alleges that while he was initially told that he could simply have the city transfer the existing compliance certificate for that property to him, the city contacted him a short time later and told him that he would have

to obtain a new certificate and have the building reinspected. After an inspection, Koury was allegedly told he had to make certain repairs. Koury alleges that after the repairs were completed the inspector told him that the reinspection had not been necessary because there was already a valid certificate on file.

Approximately one and one half years before filing this action, Koury purchased a property, at 719 Cook Avenue, with Wayne Marion, a business associate. Koury and Marion intended to operate a drive-through convenience store at the location. Koury alleges that he and Marion decided that Marion would seek a liquor license for the premises to avoid complications from the disputes between Koury and the city. The city requested a hearing on this application also, and the State Division of Liquor Control denied the license on the basis that the location was in a high crime area. During a telephone conversation concerning this application, Kelly Zachary, a member of the City Council, allegedly suggested that Marion stop doing business with Koury. By affidavit, Marion testified that based on his "perception that the future of this business in Canton would contain many problems due to the city's attitude toward Jack Koury, I chose not to appeal the denial of the liquor license and to sell my interest in the property."

In a similar incident, co-plaintiff Campbell alleges that Zoning Inspector Zengler told him that his business endeavors in the city would encounter fewer problems with the city if Koury were not involved, though Campbell does not say when this conversation took place.

Koury alleges that at a 2004 meeting of the Elections Board in Columbus, Ohio, agents of the city attempted to suppress Koury's freedom of speech by falsely informing members of the

Elections Board that Koury was legally prohibited from entering government buildings in Canton without a police escort. Koury also alleges that current Zoning Inspector Hinderer retaliated against him by complaining of a possible zoning violation at a tire shop only after Koury became associated with the business and by sending notices concerning the height of the grass at one of his properties while not sending such notices to his neighbors.

Bench Signs sued the City of Canton and several city officials in their official and individual capacities on November 12, 2004. The city filed a motion for summary judgment as to all claims. The district court held that the majority of Bench Signs' claims were barred by the applicable statutes of limitation or the doctrine of res judicata and that there was insufficient evidence to support Bench Signs' remaining claims. The district court therefore granted the city's motion on October 17, 2005. Bench Signs then filed this timely appeal.

II.

**A. Section 1983 Claims**

*1. Claims arising before November 12, 2002, are barred by the statute of limitations.*

Because Bench Signs failed to demonstrate the existence of a continuing violation, the district court properly found that most of Bench Signs' § 1983 claims are barred by the statute of limitations. The statute of limitations for § 1983 actions arising in Ohio is two years. *Banks v. City of Whitehall*, 344 F.3d 550, 553 (6th Cir. 2003). Bench Signs filed this suit on November 12, 2004;

- 6 -

therefore, those § 1983 claims arising prior to November 12, 2002, are barred by the statute of limitations.

Bench Signs offers two arguments to save these claims. First, Bench Signs argues that the statute of limitations for its claims relating to the bench business did not begin to run until January 12, 2004, when the state trial court determined that only sixty-six of Bench Signs' permits had been properly revoked. This court has held that the statute of limitations begins to run in § 1983 actions "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Sevier v. Turner*, 742 F.2d 262, 273 (6th Cir. 1984). While Bench Signs may not have been aware of the extent of its injury until the trial court issued its ruling on remand, it was, as the district court held, "at the very least, put on notice of a possible violation on April 15, 2002, when the state appellate court ruled that the city could not revoke all 400 bench sign permits. . . . At this time [Bench Signs] should have been well aware that they had not received notice of a code violation and opportunity to cure that violation with regard to each separate permit." Bench Signs cites no authority for its contention that either the inability to measure its injury fully or the existence of ongoing state litigation should prevent the statute of limitations on its § 1983 claims from running.

Second, Bench Signs argues that its claims are not barred by the statute of limitations because the city's conduct before November 12, 2002, was part of a continuing course of conduct. However, the events that Bench Signs cites as evidence of present discriminatory activity are discrete acts and they cannot, therefore, support a continuing violation claim.

"[C]ourts view 'continuing violations' as falling into two categories of 'narrowly limited exceptions' to the usual rule that 'statutes of limitations . . . are triggered at the time the alleged discriminatory act occurred.'" *Dixon v. Anderson*, 928 F.2d 212, 216 (6th Cir. 1991) (citations omitted). "The first category of continuing violations 'arises where there is some evidence of present discriminatory activity giving rise to a claim of a continuing violation.'" *LRL Prop. v. Portage Metro. Housing Auth.*, 55 F.3d 1097, 1105 (6th Cir. 1995) (quoting *Dixon*, 928 F.2d at 216). In *National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 113 (2002), the Supreme Court examined this category of continuing violations, sometimes termed "serial violations," and explained that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." In light of the holding in *Morgan*, this court has recognized that "plaintiffs are now precluded from establishing a continuing violation exception by proof that the alleged acts of discrimination occurring prior to the limitations period are sufficiently related to those occurring within the limitations period." *Sharpe v. Cureton*, 319 F.3d 259, 268 (6th Cir. 2003).

Here, the only event occurring after November 12, 2002, that resembles conduct before that date is the city's request for a hearing concerning the application for a liquor license at the Cook Avenue property. However, despite the existence of two previous occasions where the council requested this type of hearing, each request involved distinct conduct. Rather than involving any continual activity, these actions involved the council's passage of three separate resolutions, each voted on at separate meetings nearly a year or more apart, and each of which pertained to applications for liquor licenses at different properties. Furthermore, even if the alleged Cook Avenue violation were part of some continuing conduct, as will be discussed below, Bench Signs did not

show that the City Council's action in requesting a hearing concerning Marion's application for a liquor license actually violated any constitutional right.

Bench Signs alleges only one other constitutional violation after November 12, 2002. That involved alleged comments by Mayor Creighton at the meeting of the Elections Board. Even if Bench Signs alleged facts sufficient to support a constitutional violation based on that event, it is also a discrete event and not a continuation of any earlier violation alleged by Bench Signs. Bench Signs also mentions recent zoning notices concerning the height of the grass at one of Koury's properties and complaints related to a tire store in which Koury has some interest. However, because Bench Signs does not argue that either of these actions constituted a constitutional violation, these allegations cannot support either an independent § 1983 claim or a claim of continuing violation.

The second category of continuing violations, where there is "a longstanding and demonstrable policy of discrimination," *Dixon,* 928 F.2d at 217, does not apply here either. "Unrelated incidents of discrimination will not suffice to invoke this exception; rather there must be a continuing 'over-arching policy of discrimination.'" *Id*. (citation omitted). Bench Signs does not demonstrate that the adverse encounters that it alleges it had with different city officials in various contexts over the course of the last decade constituted a "course of retaliatory conduct." Instead, Bench Signs' complaint is composed of "a series of discrete and separate acts that, at best, are separate incidents of discrimination and are not sufficient, even when the plaintiffs' pleadings are liberally construed, to establish an 'over-arching policy of discrimination.'" *See LRL Prop.*, 55 F.3d at 1106.

The district court also held that Bench Signs' claims relating to alleged content-based restrictions on its advertisements and its claim that the revocation of its permits violated its constitutional rights are precluded by a previous state court judgment in a case arising from the same core of operative facts. However, because we agree with the district court's holding that these § 1983 claims are barred by the applicable statute of limitations, we do not reach the res judicata issue with respect to these claims.

*2. Bench Signs failed to offer sufficient evidence of a constitutional violation with respect to those § 1983 claims that were not dismissed on procedural grounds.*

Bench Signs does not show that either of the incidents after November 12, 2002, constituted a violation of a constitutional right.

Bench Signs' bare assertion that hostility to Koury motivated the council's decision to request a hearing from the state licensing board concerning the application for a license for the Cook Avenue property is not sufficient to survive a motion for summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). In an equal protection claim brought by a "class of one," the allegedly discriminatory government action is subject to a rational basis review. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). The only evidence that Bench Signs offers as to the council's motive is the affidavit of Wayne Marion, which states that the councilperson for the district "indicated that she felt it was insulting to the poor people living in the neighborhood to sell damaged canned goods at the facility." Bench Signs does not allege that the council's opposition to the selling of damaged canned goods in the proposed business at Cook Avenue was pretextual.

Furthermore, Bench Signs offers no evidence that the city did not request hearings as to other similarly situated individuals seeking a liquor license for businesses in Canton.[1]

Similarly, Bench Signs' claim relating to Mayor Creighton's alleged statements at the Elections Board meeting in 2004 fails. It appears that Bench Signs' claim is that the mayor violated Koury's rights under the First Amendment by lying about the existence of a court order with the object of preventing Koury from addressing the Elections Board. However, Bench Signs offers no evidence as to the actual content of the mayor's alleged statement, and does not allege that Koury was actually prevented from speaking at the meeting.

**B. State Law Tortious Interference with Contract Claims**

In addition to its § 1983 claims, Bench Signs also asserts several claims for tortious interference with contract under Ohio law. Bench Signs alleges that the city intentionally caused the breach or termination of several contracts between either Bench Signs, Inc. or Jack Koury and various third parties. These claims also fail.

*1. Bench Signs' claim regarding its contract with SARTA is untimely.*

Bench Signs first claims that the city interfered with the contract between Bench Signs and SARTA. Because Bench Signs' contract with SARTA was terminated in 1998, more than four years before this action was filed, the tortious interference claim based on that contract is barred. Bench

---

[1]The district court held in the alternative that legislative immunity shields the City Council's decision to request a hearing before the Division of Liquor Control. Because it is not necessary to address that question in order to affirm the district court's judgment, we do not reach the legislative immunity issue.

Signs concedes that the statute of limitations for a claim of tortious interference with contract is four years and that co-plaintiff Campbell stated that Bench Signs' contract with the regional transit authority was terminated more than four years before the filing of this action. Without citing any authority, however, Bench Signs argues that the limitations period was not triggered because their resulting legal conflict with SARTA is ongoing. The district court correctly determined that this argument is without merit because the limitations period for claims of tortious interference begins to run when the events giving rise to the claim occur. *See Kabealo v. Huntington Nat'l Bank*, 1995 WL 141064, *3 (Ohio Ct. App. Mar. 30, 1995).

> *2. Bench Signs' claims based on interference with its advertising contracts are precluded by a prior state court judgment.*

Next, Bench Signs asserts that when the city forced Bench Signs to remove all of its benches in Canton, the city unlawfully interfered with Bench Signs' contracts with the customers who had bought advertising on those benches. The district court correctly held that this claim is precluded by the state court judgment in the litigation involving the 2002 ordinance.

The Ohio Supreme Court has held that "multiple claims are compulsory counterclaims where 'they involve many of the same factual issues, or the same factual and legal issues, or where they are offshoots of the same basic controversy between the parties.'" *Rettig Enters., Inc. v. Koehler*, 626 N.E.2d 99, 103 (Ohio 1994) (citation omitted). Under this standard, it is apparent that Bench Signs was required to bring this claim in a prior state court action arising from the same underlying controversy and facts. In a prior state court action, Bench Signs brought a § 1983 claim against the

- 12 -

city that was based, in part, on the exact facts it now offers in support of this interference of contract claim. Bench Signs argues that its claim here is not precluded because the earlier state action involved only the constitutionality of the 2002 ordinance, while this claim is based on the wrongful revocation of all but sixty-six of Bench Signs permits in 2001. However, Bench Signs' own pleadings in the litigation over the 2002 ordinance recount the basic facts relevant to the 2001 revocation and expressly allege that the passage of the 2002 ordinance was a direct result of the city's ultimate failure in the 2001 revocation action. Thus, based on Bench Signs' own characterization, it is clear that this claim is an "offshoot[] of the same basic controversy between the parties." *Id.* Having chosen not to bring this claim in the previous state court action addressing the same underlying facts, Bench Signs is barred from doing so now.

### 3. Bench Signs failed to state a valid claim for interference of contract against Zachary.

The district court correctly held that Bench Signs failed to provide sufficient evidence of damages resulting from councilperson Zachary's alleged interference with the contract between Marion and Koury.[2] Bench Signs' claim is based on a 2004 telephone conversation between Zachary and Marion concerning the liquor license application for the Cook Avenue location. "[I]n order to recover for a claim of intentional interference with a contract, one must prove (1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) lack of justification, and (5) resulting damages." *Kenty v.*

---

[2]Similarly, even if Bench Signs' claim concerning former Zoning Inspector Zengler were not barred by the statute of limitations, it would fail independently because Bench Signs offers no evidence of damages flowing from Campbell's alleged unwillingness to engage in future business endeavors with Koury in Canton.

*Transamerica Premium Ins. Co.*, 650 N.E.2d 863, 866 (Ohio 1995).  As proof of damages, Bench Signs notes that Marion testified that he chose not to appeal the denial of the license and to sell his interest in the property because of his perception of the city's attitude toward Koury.  However, even if Marion ended this particular contractual relationship because of Zachary's statements, Bench Signs still has not offered any evidence of damages resulting from the termination of the joint lease entered into by Koury and Marion.

III.

For the foregoing reasons, the judgment of the district court is AFFIRMED.