Larry G. SCHLOSSER, Plaintiff—
Appellant,

v.

John E. POTTER, Postmaster General,
U.S. Postal Service, Defendant—
Appellee.

No. 05–35868.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 9, 2007.

Filed Sept. 21, 2007.

Elizabeth J. Honaker, Esq., Honaker Law Firm, Jeffrey Simkovic, Esq., Attorney at Law, Billings, MT, for Plaintiff–Appellant.

Timothy J. Cavan, Esq., USBI–Office of the U.S. Attorney, Billings, MT, for Defendant–Appellee.

Before: CANBY, TASHIMA, and CALLAHAN, Circuit Judges.

## MEMORANDUM *

Larry G. Schlosser appeals from the district court's denial of relief on his claims of age and disability discrimination by his employer, the United States Postal Service. The district court granted summary judgment for the Postal Service. In doing so, the district court declined to allow Schlosser to amend his complaint to allege claims under the Age Discrimination in Employment Act (ADEA), 29 U.S.C.

* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

§ 633(a), rather than Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, determined that judicial review of some of Schlosser's claims was barred by his failure timely to exhaust his administrative remedies, and held that those claims that had been exhausted failed to allege nontrivial adverse employment decisions. We affirm, holding that (a) Schlosser failed timely to exhaust his administrative remedies for claims based on events that happened on or before his last day at work, February 11, 1997, (b) his claims based on actions that took place in May 1997, and later, fail to allege sufficient adverse employment decisions to state claims under the Rehabilitation Act, and (c) the district court did not abuse its discretion in denying leave to amend because the amendment would have been futile.

## I

The complaint filed by Schlosser on May 5, 2003, contained six counts. The first count alleged that beginning in 1995 the Postal Service discriminated against him by denying him overtime. The second count alleged that the Postal Service had discriminated against him because "in late November or early December 1996," the local postmaster cursed and yelled at Schlosser. The third count alleged that an incident on the job on February 11, 1997, constituted discrimination by the Postal Service against Schlosser "in the terms and conditions of his employment on the basis of his preexisting conditions of Depression and Anxiety, and Hypertension." All three counts asserted that the alleged acts and practices "constitute unlawful discriminatory practices within the meaning of Title VII, and the Rehabilitation Act of 1973."

The final three counts alleged actions that occurred after May 1997. Count four alleged that the Postal Service discriminated against Schlosser by requiring him to submit to an examination by a psychiatrist, a psychologist, and a chemical dependency evaluator. Count five alleged that Schlosser was harassed and discriminated against by a letter from the Postal Service dated June 30, 1997. Count six alleged that in late 1997, and continuing into 1998, Schlosser was harassed by his supervisor placing "hang-up calls" to Schlosser's home. These counts asserted that these acts constituted "unlawful discriminatory practices within the meaning of the Rehabilitation Act of 1973, as amended and Title VII."

In 2005, the district court granted summary judgment in favor of the Postal Service, holding that (1) Schlosser had not exhausted his administrative remedies on the allegations set forth in counts one, two and three, (2) Schlosser had not shown that he was disabled prior to February 11, 1997, and (3) he had not demonstrated any adverse employment action as a result of the alleged activities that occurred after May 1997. The district court also denied Schlosser leave to amend the complaint to state claims of action under the ADEA.[1]

## II

The district court's grant of summary judgment is reviewed de novo. *Buono v. Norton,* 371 F.3d 543, 545 (9th Cir.2004). The district court's determinations concerning the exhaustion of administrative remedies are also reviewed de novo. *B.K.B. v. Maui Police Dep't,* 276 F.3d 1091, 1099 (9th Cir.2002) ("[W]e review *de novo* the district court's determination that it did not have jurisdiction to hear appel-

---

1. The parties agree that Schlosser's claims of age discrimination should have been brought under the ADEA rather than Title VII.

lant's statutory sexual harassment claims due to her failure to exhaust"). The district court's denial of leave to amend a complaint is reviewed for abuse of discretion. *Yakama Indian Nation v. Wash. Dep't. of Revenue,* 176 F.3d 1241, 1246 (9th Cir.1999).

### III

 It is uncontested that all of the acts alleged in counts one, two, and three took place on or before February 11, 1997, and that Schlosser did not contact an EEO counselor until July 16, 1997. However, 29 C.F.R. § 1614.105 provides that an "aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory." We have held that failure to file a timely grievance may be fatal to a federal employee's discrimination claim. *Johnson v. United States Treasury Dep't.,* 27 F.3d 415, 416 (9th Cir.1994) ("The district court entered judgment against Johnson because his complaint to the EEO counselor was untimely. We agree."); *Boyd v. United States Postal Serv.,* 752 F.2d 410, 414–15 (9th Cir.1985) ("Because [Boyd] did not bring his grievance to the attention of the EEO counselor within 30 calendar days of the final personnel action, Boyd is precluded from pursuing his claim in federal courts."). Accordingly, absent some exception to the exhaustion requirement, Schlosser's failure to invoke his administrative remedies for over 150 days from February 11, 1997, bars his claims under counts one, two, and three.

 None of Schlosser's four arguments for an exception to the exhaustion requirement is persuasive. He first argues that he is entitled to an extension of time under 29 C.F.R. § 1614.105(a)(2), which allows the agency to extend the 45–day time limit when (a) an individual shows that he was not notified of the time limit, and was not otherwise aware of the time limit, or (b)

did not know that the discriminatory action had taken place, or (c) was prevented by reasons beyond his control from contacting the counselor. However, Schlosser did not ask the Postal Service for an extension of time and none was granted, and the Postal Service's letters limiting the scope of its investigation are inconsistent with such an extension of time.

 Schlosser's second argument is that following this court's approach in *BKB,* 276 F.3d at 1099, his July 16, 1997 Information for Precomplaint Counseling should be liberally construed. But a liberal reading of his submission does not explain his delay in seeking counseling. Although the information mentions that Schlosser lost sight in one eye as a result of the February 11 incident, it does not claim that this prevented him from exhausting his administrative remedies. Instead, the information stated that its timing was occasioned by Schlosser receiving the June 30 letter. Thus, a liberal reading of the information does not explain its tardiness.

 Schlosser's third argument is that in *Zipes v. Trans World Airlines,* 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982), the Supreme Court held that the limitations periods for filing an EEO complaint are not jurisdictional and are subject to waiver and equitable tolling. However, Schlosser has not produced evidence entitling him to equitable tolling. He has not shown that he had neither actual nor constructive notice of the time requirements. *See Leorna v. U.S. Dep't. of State,* 105 F.3d 548, 551 (9th Cir.1997). Schlosser refers to his medical problems, but has not shown that they prevented him from making a timely contact with the counselor.

 Finally, Schlosser argues that his information was timely because he alleged a continuing violation, and under the con-

tinuing violation doctrine, if one discrete act occurred within the 45–day limit, the entire claim remains cognizable. Even accepting that Schlosser may claim a continuing violation,[2] his arguments are not well taken. The first three counts of the complaint do not refer to any action that took place after February 11, 1997, and do not allege any continuing violation. Moreover, any such claim would depend on the challenged actions by the Postal Service in the summer of 1997 being discrete acts of discrimination. *See Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 113–14, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). As explained in the next section, the Postal Service's actions in the summer of 1997 were not discrete acts of discrimination. Accordingly, we affirm the court's dismissal of the first three counts for failure to exhaust administrative remedies.[3]

## IV

■ The district court properly concluded that counts four and five failed to state a claim under the Rehabilitation Act. The Postal Service's requiring Schlosser to submit to examinations in June 1997 could not reasonably be construed as harassment under the Rehabilitation Act. Schlosser had not reported to work since the February 11 incident, and although he had filed a claim with the Office of Workmen's Compensation (OWCP) for anxiety and depression, he did not contact the Postal Service about his absence. Under these circumstances, the Postal Service's decision to ask Schlosser to submit to a fitness-for-duty examination was reason-

able. Moreover, because Schlosser alleged that he suffered from anxiety and depression in his claim with the OWCP, the scope of the examination was reasonable. Schlosser did not object to the examination and submitted to the examination. He agrees with the examiners' conclusion that he was not fit for duty. Whatever his subjective feelings, Schlosser has not shown that being asked to undergo a fitness-for-duty examination, after a four-month, illness-related absence, could be considered objectively unreasonable. Thus, the district court properly concluded that count four fails as a matter of law.

■ Count five alleges that the Postal Service's June 30 letter constituted harassment because it stated that "because of mental disability, he was facing removal unless, within five days of receipt of the letter, he did not voluntarily retire or resign." The record does not support this allegation. The letter stated that because Schlosser was not fit for duty, which he agrees was true, he "may be eligible for either a disability retirement or an optional retirement." It then asked him to "please contact" the Human Resources Specialist within five working days. The letter stated that if he did not retire, the "Postal Service may choose to initiate your removal from your position," but goes on to state that if the Postal Service "determines that this is a viable option, you will be notified *in advance* of our decision" (emphasis added). Any apprehension that might have been raised by this letter was promptly assuaged by a July 9, 1997 letter

2. Schlosser recognizes that in *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 113, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002), the Supreme Court may have abrogated the continuing violation doctrine as it applies to discrete discriminatory acts, but he argues that he may invoke the doctrine because he filed his administrative claims in 1997, five years before the Court's decision in *Morgan.*

3. Schlosser's failure timely to exhaust his administrative remedies also bars judicial review of his allegations in count three that the February 11, 1997 incident violated the Rehabilitation Act. Accordingly, we do not reach the question whether the district court erred in determining that hypertension cannot constitute a disability.

approving Schlosser's request for 239 hours of annual leave. Furthermore, Schlosser does not allege that he lost any benefits as a result of the June 30, 1997 letter. Accordingly, the June 30, 1997 letter will not support a claim under the Rehabilitation Act.

## V

 Count six alleges that Schlosser's supervisor and others harassed him by making hang-up phone calls in 1997 and 1998 in retaliation for Schlosser filing an injury-on-duty claim with the OWCP. Although the district court incorrectly stated that Schlosser was not working for the Postal Service at that time, the count does not state a cognizable claim under the Rehabilitation Act, even accepting that Schlosser was an employee.[4] Schlosser agrees that in order to state a claim of retaliation he must show that (1) he was engaged in protected activity, (2) he suffered an adverse employment decision, and (3) there is a causal link between the activity and the employment action. *Folkerson v. Circus Circus Enters.*, 107 F.3d 754, 755 (9th Cir.1997). There is no question that Schlosser was engaged in protected activity, but he suffered no "adverse employment decision."

In *Ray v. Henderson*, 217 F.3d 1234, 1243 (9th Cir.2000), this court adopted the EEOC's definition of adverse employment action: "any adverse treatment that is based on a retaliatory motive and is reasonably likely to deter the charging party or others from engaging in protected activity." However, we have indicated that there must be some adverse effect on the employee's work or status. *Id.* ("[I]t does not cover every offensive utterance by co-workers, because offensive statements by co-workers do not reasonably deter em-

ployees from engaging in protected activity."); *Vasquez v. County of L.A.*, 307 F.3d 884, 891 (9th Cir.2002) ("Otherwise, every minor employment action that an employee did not like could become the basis of a discrimination suit. The better approach is to determine whether a reasonable person in the same situation would view the action as disadvantageous.").

Here, Schlosser does not allege any employment consequences from the phone calls. He does not allege any change in the conditions of his employment (he never returned to work following the February 11 incident), and he does not allege that his benefits were affected by the phone calls. The argument that the phone calls might deter others is too attenuated. Unlike the transfer in *Vasquez*, which was obvious to other employees, only Schlosser knew of the alleged phone calls. Thus, other employees could only be deterred by the phone calls if Schlosser told them of the calls. The potential impact of these calls is reduced by the facts that (a) Schlosser could identify only one phone call (that was actually received by his son, not Schlosser) as coming from his supervisor, (b) Schlosser was not reporting to work, so he was not likely to relate his experience to other employees, and (c) Schlosser received the phone calls only after he had been absent from work for over six months, a condition that did not apply to other employees. Thus, Schlosser has failed to show any adverse employment action from the phone calls.

## VI

 Schlosser also contends that the last three counts in his complaint state a claim of a pattern of harassment under the ADEA that could survive summary judg-

**4.** It appears that Schlosser remained an employee of the Postal Service until his disability retirement was approved in November 1998.

ment. This contention is not well taken. First, as previously noted, neither the Postal Service's requirement that Schlosser submit to a fitness-for-duty examination nor its June 30 letter was discriminatory or harassing. Second, there is no indication that any of the alleged activities had any impact on Schlosser's employment situation or benefits. Third, the hang-up calls did not commence until "the last part of 1997," well after Schlosser filed his EEO information. Fourth, the calls do not appear to have been based on Schlosser's age but were allegedly motivated by his challenge to his benefits. This is an alleged violation of the Rehabilitation Act, not the ADEA. Moreover, because the allegations did not result in any "adverse employment decision" sufficient to support a claim under the Rehabilitation Act, they do not amount to "contributing acts" sufficient to revive a time-barred claim of a pattern of harassment.

## VII

 Finally, we determine that the district court's refusal to allow Schlosser to amend his complaint was not an abuse of discretion. We have held that leave to amend should be freely given. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir.2000) (en banc). We have also noted that a court should consider four factors in determining whether to grant leave to amend a pleading: (1) prejudice to the opposing party, (2) undue delay, (3) bad faith or dilatory motive, and (4) futility of an amendment. *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir.1987). Here, even accepting that the first three factors favor leave to amend, an amendment would have been futile because, as previously noted, Schlosser failed to exhaust his administrative remedies. Accordingly, we cannot conclude that the dis-

trict court abused its discretion in denying leave to amend. *See Yakama Indian Nation*, 176 F.3d at 1246 ("We review for abuse of discretion a district court's refusal to grant leave to amend after a responsive pleading has been filed."). For the foregoing reasons, the district court's summary judgment in favor of the Postal Service is **AFFIRMED.**

