******************************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ROBIN TWERDAHL *v.* WILTON PUBLIC SCHOOLS
(AC 45969)

Cradle, Westbrook and DiPentima, Js.

*Syllabus*

The plaintiff sought to recover damages from the defendant school district
for her alleged constructive discharge from employment as a teacher.
The plaintiff had been employed by the defendant for approximately
twenty-four years when she resigned from her position in August, 2019.
On December 19, 2019, she filed an age discrimination complaint with
the Commission on Human Rights and Opportunities (CHRO). There-
after, the CHRO issued a release of jurisdiction over the complaint,
and the plaintiff commenced the present action against the defendant,
alleging a violation of the Connecticut Fair Employment Practices Act
(§ 46a-51 et seq.), constructive discharge, and breach of contract. The
plaintiff, who was seventy years old, claimed that she was forced to
resign after the defendant created an intolerable work environment by
marginalizing and unfairly criticizing her because it wanted to replace
her with a younger teacher. The defendant filed a motion to strike the
plaintiff's complaint on the grounds that it was untimely and failed to
state a claim on which relief could be granted. The trial court granted
the defendant's motion, and, thereafter, the plaintiff filed an amended
complaint alleging only constructive discharge. In that complaint, the
plaintiff added allegations related to a report issued by the defendant
on June 10, 2019, in which it acknowledged that an assistant principal
had copied certain portions of the plaintiff's prior evaluations into her
2016–2017 school year evaluation and recommended a review of adminis-
trators' practices of referencing evaluations from prior years. The defen-
dant filed a motion to strike, which the trial court granted, finding that
the plaintiff's complaint to the CHRO was untimely pursuant to the 180
day limitation period set forth in the applicable statute ((Rev. to 2019)
§ 46a-82 (f)), because the plaintiff had failed to identify conduct relating
to an intolerable working environment that had persisted to June 22,
2019, or thereafter, and her allegations were insufficient to establish
that the working conditions were so intolerable that a reasonable person
would feel compelled to resign. Subsequently, the trial court granted
the defendant's motion for judgment, and the plaintiff appealed to this
court. *Held* that the trial court did not err in granting the defendant's
motion to strike because it properly determined that the plaintiff's com-
plaint to the CHRO was untimely: the most recent alleged act of discrimi-
nation in the present case occurred in May, 2018, which was not within
180 days of the plaintiff's filing of her complaint with the CHRO, as
required pursuant to (Rev. to 2019) § 46a-82 (f); moreover, contrary to
the plaintiff's assertion that the 180 day limitation period did not begin
to run until the date of her resignation, such an interpretation was
contrary to the plain language of (Rev. to 2019) § 46a-82 (f), and the
case that the plaintiff cited to support her claim, *Green* v. *Brennan* (578
U.S. 547), was inapplicable, as it was governed by a federal regulation
(29 C.F.R. § 1614.105 (2010)) that did not share the same language as
(Rev. to 2019) § 46a-82 (f); furthermore, the plaintiff did not allege any
ongoing discrimination that continued until her resignation on August
14, 2019, as she had not been working for at least several weeks prior
to that date because school was not in session during the summer
months, nor did she identify how the defendant's alleged inaction
between June 22 and August 14, 2019, regarding the recommendations in
the defendant's report perpetuated an intolerable working environment
when school was not in session.

Submitted on briefs November 15, 2023—officially
released January 30, 2024

*Procedural History*

Action to recover damages for, inter alia, the plain-
tiff's alleged constructive discharge from employment,

and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk, where the court, *Hon. Kenneth B. Povodator*, judge trial referee, granted the defendant's motion to strike the complaint; thereafter, the court, *Hon. Kenneth B. Povodator*, judge trial referee, granted the defendant's motion for judgment and rendered judgment thereon, from which the plaintiff appealed to this court. *Affirmed.*

*Ashling M. Soares* filed a brief for the appellant (plaintiff).

*Peter J. Murphy* and *Keegan A. Drenosky* filed a brief for the appellee (defendant).

*Opinion*

CRADLE, J. The plaintiff, Robin Twerdahl, appeals from the judgment of the trial court, rendered following the court's decision striking her complaint against the defendant, Wilton Public Schools, in which she claimed that she was constructively discharged from her employment with the defendant. The plaintiff claims that the court erred in granting the motion to strike filed by the defendant on the grounds that the filing of her complaint alleging age discrimination to the Commission on Human Rights and Opportunities (CHRO) was untimely and she failed to state a claim on which relief could be granted. We agree that the plaintiff's complaint to the CHRO was untimely and, accordingly, affirm the judgment of the trial court.[1]

The following facts and procedural history are relevant to our resolution of the plaintiff's claim on appeal. The plaintiff started her employment with the defendant school district in 1995. She resigned from that employment on August 14, 2019. On December 19, 2019, she filed an age discrimination complaint with the CHRO, and, on March 31, 2020, the CHRO issued a release of jurisdiction.[2] In June, 2020, the plaintiff commenced this action, and, on January 7, 2021, she filed a three count amended complaint alleging a violation of the Connecticut Fair Employment Practices Act, General Statutes § 46a-51 et seq., constructive discharge and breach of contract. All three of the plaintiff's claims were based on the same core allegation—that she was seventy years old and still qualified for her position as a school teacher at the time that she was forced to resign and that the defendant was motivated to create an intolerable work environment by the plaintiff's "advanced age and [a desire] to replace her with a younger teacher . . . ." Specifically, the plaintiff alleged that, in 2010, the defendant's staff began to "marginalize" her and "unfairly criticiz[e] her performance" with "harassment [that] progressively worsened over time." In support of these allegations, she referred to negative performance evaluations that she had received. With respect to her 2016–2017 school year evaluation, the plaintiff alleged that the newly hired assistant principal failed to follow proper procedures, plagiarized portions of prior evaluations that had been written by the former assistant principal, and "inappropriately inserted the number of sick days that [the plaintiff] had used . . . in a punitive statement . . . downgrad[ing] her evaluation accordingly." The plaintiff challenged the criticism, and, after the defendant failed to respond, the plaintiff initiated the union grievance process. The plaintiff alleged that, when it became apparent that the defendant had no intention of remedying the "discriminatory treatment," she had "no choice but to resign from her position . . . ."

On February 10, 2021, the defendant filed a motion to

strike the plaintiff's amended complaint on the grounds that her complaint to the CHRO was untimely in that it was not filed within the statutorily prescribed 180 days and she had failed to set forth a claim on which relief could be granted. The court, *Hon. Kenneth B. Povodator*, judge trial referee, granted the defendant's motion, striking all three counts of the plaintiff's amended complaint. The court reasoned, inter alia: "[T]he plaintiff claims that she was forced to resign by the intolerable workplace conditions on August 14, 2019. The most recent antecedent events by or attributable to the defendant is that in May, 2018, Dr. Kevin Smith (status with the defendant, unknown—a Dr. Charles Smith [was] previously identified as an assistant superintendent) is alleged to have stated he would take action but no action was taken, being the latest conduct alleged by time frame. This, in turn, related to a work evaluation for an earlier academic year. There is no other conduct alleged that was attributable to, explicitly or impliedly, the defendant, much less conduct that might reasonably be construed as creating a hostile work environment and/or justifying constructive discharge. Based on the factual allegations of the complaint, the complaint to the CHRO was not timely, and the allegations of conduct do not rise to the level supporting a claim of hostile work environment and/or constructive discharge."

On March 16, 2022, the plaintiff filed a one count second amended complaint alleging constructive discharge.[3] In her second amended complaint, the plaintiff added allegations related to a report issued by the defendant on June 10, 2019. The plaintiff alleged that, in that report, the defendant acknowledged that the assistant principal had improperly copied portions of the plaintiff's prior evaluations and recommended a review of " 'administrators' practices regarding referencing evaluations from prior years . . . .' " The plaintiff alleged that, "between June 10 . . . and August 14, 2019, the defendant failed to take a vital remedial action that it had promised to take" in the June 10, 2019 report, "in that it failed to make any changes to the administrators' practices regarding referencing evaluations from prior years or to provide the plaintiff with an explanation . . . that no changes were appropriate . . . ." The plaintiff alleged that, "[a]s a result of the defendant's discriminatory treatment of [her], she was in constant fear of being ridiculed or even terminated. As a result, she suffered from anxiety and depression. Ultimately, when it became apparent that the defendant had no intention of adequately remedying the discrimination, she was forced to resign from her position, which she did on August 14, 2019."

On April 13, 2022, the defendant filed a motion to strike the plaintiff's second amended complaint on the grounds that her complaint to the CHRO was untimely and her complaint failed to state a claim on which relief

could be granted. The court granted that motion in a memorandum of decision dated September 9, 2022, and struck the complaint on the grounds that the plaintiff's complaint to the CHRO was untimely under the 180 day deadline in General Statutes (Rev. to 2019) § 46a-82 (f),[4] as "the plaintiff has [not] identified conduct relating to an intolerable working environment that had persisted to June 22, 2019, and thereafter, sufficient to make the actual date of the filing of her CHRO complaint [on December 19, 2019] timely" and the plaintiff's allegations were insufficient to "establish [that the] working conditions [were] so intolerable that a reasonable person would feel compelled to resign . . . ."

In addressing the timeliness of the plaintiff's complaint to the CHRO, the court first summarized the pertinent allegations of her complaint. Specifically, as to the allegations that were most recent in time, the court recounted: "Paragraph 29 [of the second amended complaint] jumps to June 10, 2019, reporting the issuance of an investigative report relating to the plaintiff. The report was critical of the manner in which the 2017 evaluation had been prepared (largely copying from the previous year's evaluation), including improper comments about and treatment of perceived excessive sick time. The report did not find malice on the part of the preparer of that evaluation but rather concluded that inexperience and a misunderstanding of guidance she had received were involved. The report generally distinguished between identified improper conduct and the absence of improper motives." The court noted that "[p]aragraph 29 [of the second amended complaint] also recites the investigative report's recommendations, including upgraded ratings for the plaintiff in the year-end review, and proposed monitoring and corrective action to be taken."

After setting forth the additional allegations pertaining to the time period between June 10 and August 14, 2019, as referenced herein, the court explained, inter alia: "The foregoing summarizes the complaint insofar as it identifies predicate conduct of the defendant that is claimed to be the basis of her constructive discharge. . . . The plaintiff having filed her CHRO complaint on December 19, 2019, the complaint can only encompass events occurring on or after June 22, 2019. There is no affirmative conduct alleged in the period starting on June 22, 2019. Inferentially, the plaintiff is relying on inaction between June 10, 2019, and her resignation on August 14, 2019. Accepting that in some circumstances inaction might constitute actionable conduct for purposes of discrimination in general and constructive discharge in particular, the plaintiff has not described such a situation.

"The inaction identified could not have been part of an intolerable environment, because it did not impact any environment, especially for the time frame in ques-

tion. The failure to act in that period was a failure 'to make any changes to administrators' practices regarding referencing evaluations from prior years, or to provide the plaintiff with an explanation of any determination that no changes were appropriate, if such a determination had been made.' This failure relates only to the manner in which annual evaluations are made by administrators, and more narrowly, the procedures/ practice of 'referencing evaluations from prior years.' Putting aside the question of how the plaintiff would learn of changes made in that interval ([between] June 10 and August 14, 2019) and whether she implicitly is claiming that there was a duty to notify her of any changes in procedures or decisions not to make changes—mostly summer recess for schools—how was inaction or delayed action relating to protocols for preparing annual reviews related to the existence (continued existence) of an intolerable condition during the identified interval? The plaintiff has not alleged any agreed or otherwise identified deadline for action, and to the extent that end of year evaluations occur toward the end of a school year, why was August 14, 2019, of any (much less special) significance? This assumes that even June 10, 2019, has special significance in terms of an intolerable environment. On that date, a generally favorable report had been released—while perhaps not as critical of individuals as the plaintiff may have wanted, it did criticize the manner in which the 'plagiarized' report had been prepared and was critical of the person who had prepared it (if attributing it to inexperience, etc.). It also indicated that the plaintiff's review would be upgraded in a substantial manner. And . . . it contained the never challenged assertion that '[the plaintiff] acknowledged that no current administrator ever has suggested that [the plaintiff's] job is in jeopardy or that the district is considering terminating her employment.'

"The court is required to give the nonmoving party the benefit of all reasonable favorable inferences but there is no way to read the complaint as asserting any conduct that reasonably can be construed as part of an intolerable environment within 180 days of filing of the CHRO complaint—and this does not include any additional weight [given] to the fact that 180 days prior to the date of filing may already have been during school summer vacation such that there was no workplace environment being encountered on June 22 and thereafter.

"Assuming the factual accuracy of [the allegation that the defendant failed to take remedial action during the time period between June 10 and August 14, 2019], and further assuming that there was a deadline for action on or after June 22, 2019, and further assuming that there had been a duty to report to the plaintiff on the status of the remedial action anticipated, the court cannot conclude that the plaintiff has identified conduct

relating to an intolerable working environment that had persisted to June 22, 2019, and thereafter, sufficient to make the actual date of filing of her CHRO complaint timely." (Citation omitted; emphasis omitted.) The court rendered judgment on October 11, 2022, and this appeal followed.

On appeal, the plaintiff claims that the court erred in striking her complaint on the ground that her claim to the CHRO was not untimely because the 180 day period prescribed by § 46a-82 (f) did not begin to run until her August 14, 2019 resignation.[5] We are not persuaded.

To resolve the plaintiff's claim on appeal, we must interpret the statutory language set forth in § 46a-82 (f). Issues of statutory interpretation present questions of law over which we exercise plenary review. See *L. L.* v. *M. B.*, 216 Conn. App. 731, 739, 286 A.3d 489 (2022). "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case . . . . General Statutes § 1-2z directs this court to first consider the text of the statute and its relationship to other statutes to determine its meaning. If, after such consideration, the meaning is plain and unambiguous and does not yield absurd or unworkable results, we shall not consider extratextual evidence of the meaning of the statute." (Internal quotation marks omitted.) Id., 740. Our review of a court's ruling on a motion to strike also is plenary. *Tremont Public Advisors, LLC* v. *Materials Innovation & Recycling Authority*, 216 Conn. App. 775, 778, 286 A.3d 485 (2022), cert. denied, 346 Conn. 906, 287 A.3d 1089 (2023).

Pursuant to § 46a-82 (f), complaints filed with the CHRO must be "filed within one hundred and eighty days after *the alleged act of discrimination* . . . ." (Emphasis added.) The plain language of the statute focuses on the allegedly discriminatory conduct of the defendant and makes no mention of the date of a complainant's resignation. See General Statutes (Rev. to 2019) § 46a-82 (f).

In support of her argument that the 180 day period did not begin to run until the date of her resignation, the plaintiff cites to *Green* v. *Brennan*, 578 U.S. 547, 136 S. Ct. 1769, 195 L. Ed. 2d 44 (2016), wherein the United States Supreme Court held that the forty-five day limitation period within which to file a claim under 29 C.F.R. § 1614.105 (2010) began to run on the date that the employee, Marvin Green, resigned. Id., 550. As the trial court aptly concluded, *Green* is inapposite to the present case. Green's claim was not governed by § 46a-82 (f) or any other Connecticut statute. Because Green was a federal employee who worked in Colorado, his constructive discharge claim was governed by 29

C.F.R. § 1614.105; see id., 550, 553; which is not applicable to the present case. Moreover, the plaintiff's reliance on *Green* is further belied by the difference in the statutory language at issue. The regulation at issue in *Green* requires an aggrieved person to initiate his or her claim "within 45 days of the date of the matter alleged to be discriminatory . . . ." 29 C.F.R. § 1614.105 (a) (1) (2010). Although the court in Green held that the " 'matter alleged to be discriminatory' " was not limited to the conduct of the defendant; *Green* v. *Brennan*, supra, 553–54; that is not the same language used in § 46a-82 (f), which specifically applies to the employer's discriminatory *act*.

Additionally, as the trial court explained, the plaintiff in the present case, unlike Green, failed to allege any ongoing discrimination that continued until the date of her resignation in that she did not, in fact, work for at least several weeks prior to that date because school was not in session for the summer. "Mere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination. . . . In order for the time period to commence with the discharge, [the plaintiff] should have identified the alleged discriminatory acts that continued until, or occurred at the time of, the actual termination of [her] employment. . . . [She] could not use a termination that fell within the limitations period to pull in the time-barred discriminatory act. Nor could a time-barred act justify filing a charge concerning a termination that was not independently discriminatory." (Citations omitted; internal quotation marks omitted.) *National Railroad Passenger Corp.* v. *Morgan*, 536 U.S. 101, 112–13, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002).

Here, the plaintiff has not identified how the defendant's alleged inaction perpetuated an intolerable working environment when school was not in session for at least thirty days preceding the date of her resignation. We therefore agree with the court's conclusion that "there is no way to read the [plaintiff's] complaint as asserting any conduct that reasonably can be construed as part of an intolerable environment within 180 days of filing of the CHRO complaint . . . ." Accordingly, the court properly determined that the plaintiff's complaint to the CHRO was untimely.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Because we agree with the court's conclusion that the plaintiff's complaint to the CHRO was untimely, we need not address her challenge to the court's conclusion that she failed to state a claim on which relief could be granted.

[2] General Statutes § 46a-100 provides in relevant part: "Any person who has filed a complaint with the commission in accordance with section 46a-82 and who has obtained a release of jurisdiction in accordance with section 46a-83a or 46a-101, may bring an action in the superior court for the judicial district in which the discriminatory practice is alleged to have occurred, the judicial district in which the respondent transacts business or the judicial district in which the complainant resides . . . ." Pursuant to General Stat-

utes § 46a-101 (e), such action must be brought within ninety days of the receipt of the release of jurisdiction.

[3] Although the plaintiff failed to replead within fifteen days following the court's decision striking her amended complaint pursuant to Practice Book § 10-44, the court permitted her to file a request to amend her complaint, which it granted.

[4] General Statutes (Rev. to 2019) § 46a-82 (f) provides: "Any complaint filed pursuant to this section must be filed within one hundred and eighty days after the alleged act of discrimination, except that any complaint by a person claiming to be aggrieved by a violation of subsection (a) of section 46a-80 must be filed within thirty days of the alleged act of discrimination."

All references to § 46a-82 in this opinion are to the 2019 revision of the statute.

[5] The plaintiff also claims that the court erred in concluding that her CHRO complaint was untimely because the "[d]efendant's inactions were part of an ongoing discriminatory practice, rendering the CHRO complaint timely under the continuing violation theory." See *Wellswood Columbia, LLC* v. *Hebron*, 327 Conn. 53, 77 n.14, 171 A.3d 409 (2017) ("The continuing violations doctrine is an equitable exception to a strict application of a statute of limitations where the conduct complained of consists of a pattern that has only become cognizable as illegal over time. . . . [W]hen a defendant's conduct is part of a continuing practice, an action is timely [as] long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred." (Internal quotation marks omitted.)). Because the plaintiff did not argue to the trial court that her complaint to the CHRO was timely on the basis of the continuing violation theory and is raising it for the first time on appeal, that argument is not properly before us. See *Lowthert* v. *Freedom of Information Commission*, 220 Conn. App. 48, 56, 297 A.3d 218 (2023).